[Cite as *State v. Dixon*, 2016-Ohio-2882.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2015-CA-67 |
| | : | |
| v. | : | Trial Court Case No. 15-CR-241 |
| | : | |
| BRANDON R. DIXON | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 6th day of May, 2016.

. . . . . . . . . .

MEGAN M. FARLEY, Atty. Reg. No. 0091678, Clark County Prosecutor's Office, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
    Attorney for Plaintiff-Appellee

JON PAUL RION, Atty. Reg. No. 0067020, and NICOLE RUTTER-HIRTH, Atty. Reg. No. 0081004, Rion, Rion & Rion, L.P.A., Inc., 130 West Second Street, Suite 2150, Post Office Box 1262, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1} Brandon R. Dixon appeals from his conviction and sentence following a

negotiated guilty plea to charges of felonious assault and fourth-degree felony OVI.

{¶ 2} In his sole assignment of error, Dixon contends the trial court erred in imposing maximum, consecutive sentences "absent consideration of the mitigating factors and R.C. 2929.11 and R.C. 2929.12."

{¶ 3} The record reflects that Dixon originally was charged by indictment with aggravated vehicular assault, felony OVI, and failure to comply with an order or signal of a police officer. The charges stemmed from his act of fleeing from a traffic stop and driving a Corvette approximately 100 miles per hour through a residential area at 2:00 a.m.   After running red lights and jumping railroad tracks, he eventually lost control and struck a tree. His passenger, Madison Burkitt, was ejected from the vehicle and nearly died. She suffered 47 broken bones and was in a coma for 33 days. At the time of the accident, Dixon was intoxicated and was driving with three prior OVI convictions and with 15 open driver's license suspensions. Following his indictment, he pled guilty to a bill of information charging him with felonious assault and fourth-degree felony OVI. The trial court sentenced him to statutory-maximum terms of eight years for felonious assault and 30 months for OVI. It ordered the terms to be served consecutively.

{¶ 4} On appeal, Dixon raises two primary arguments under his assignment of error. First, he contends the trial court erred in failing to state that it had considered R.C. 2929.11 and R.C. 2929.12 when imposing his sentence. Second, he claims the trial court erred in finding no mitigating factors present, thereby failing to consider evidence of several such factors. In connection with this argument, Dixon asserts that the record does not support the trial court's consecutive-sentence findings. He also maintains that maximum sentences were improper.

{¶ 5} Upon review, we find Dixon's assignment of error to be unpersuasive. The principles and purposes of felony sentencing are set forth in R.C. 2929.11. The statutory "seriousness" and "recidivism" factors that guide a court's sentencing discretion are found in R.C. 2929.12. Contrary to Dixon's argument, this court found that a trial court need not expressly state that it has considered R.C. 2929.11 and R.C. 2929.12. *See*, *e.g.*, *State v. Guy*, 2d Dist. Clark Nos. 2015-CA-28, 2015-CA-29, 2016-Ohio-425, ¶ 16, quoting *State v. Neff*, 2d Dist. Clark No. 2012-CA-31, 2012-Ohio-6047, ¶ 5. In any event, although the trial court here did not reference either statute by number during the sentencing hearing, it explicitly considered and applied both of them to the facts before it. (Sentencing Tr. at 10, 12, 16). It also stated in its sentencing entry that it had considered the factors set forth in R.C. 2929.12 and the principles and purposes of sentencing found in R.C. 2929.11. (Doc. #6 at 2).

{¶ 6} In particular, the trial court stated at sentencing that "[i]n looking at the factors under the Revised Code to determine [its] sentence," it had considered that "the victim suffered serious physical, psychological, and economic harm." (*Id.* at 10). The fact that a victim suffers serious physical, psychological, or emotional harm is, of course, a consideration under R.C. 2929.12(B)(2) making an offender's conduct more serious than conduct normally constituting the offense. The trial court also stated that it found "no factors under the Revised Code that render either of these offenses less serious." (*Id.*). This was a reference to the factors listed in R.C. 2929.12(C). The trial court additionally addressed Dixon's recidivism. (*Id.* at 10-13). It specifically identified several of the factors under R.C. 2929.12(D) that made recidivism more likely. (*Id.* at 12-13). Finally, the trial

court made clear that it had considered the principles and purposes of sentencing under R.C. 2929.11. It explicitly stated that it had selected its sentence "[i]n order to meet the guidelines of the Revised Code, which is to adequately punish the offender and to protect the community." (*Id.* at 16). This statement is a clear reference to the guiding principles found in R.C. 2929.11.

{¶ 7} We also reject Dixon's argument about the trial court's failure to find any mitigating factors that lessened the seriousness of his offenses. He raises this argument in the context of the trial court's decision to impose consecutive sentences. That issue, in turn, implicates R.C. 2929.14(C)(4), which permits consecutive prison terms

> if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶ 8}** Here the trial court made all of the findings for consecutive sentences, including all three of the alternative findings under R.C. 2929.14(C)(4)(a), (b), and (c). (Sentencing Tr. at 16-17). We review those findings under the standard set forth in R.C. 2953.08(G)(2), which authorizes us to vacate Dixon's consecutive sentences if we clearly and convincingly find that the record does not support them. *See State v. Marcum*, Slip Opinion No. 2016-Ohio-1002.

**{¶ 9}** As evidence of mitigation, Dixon cites the fact that he "accepted responsibility" and "admitted he was wrong, quit drinking, apologized to the victim, maintained steady employment, and cared for his children." (Appellant's brief at 7). The trial court found no "genuine remorse," however, and concluded that Dixon's only real concern was for himself. (Sentencing Tr. at 12, 14). In a letter to the trial court, Burkitt also disputed his claim that he had been sober since the accident. But even if we accept the "mitigating" facts Dixon cites, the record does not clearly and convincingly fail to support the trial court's consecutive-sentence findings. To the contrary, the record overwhelmingly supports them.

**{¶ 10}** The record reflects that Dixon has an extraordinary history of criminal convictions for, among other things, multiple OVIs, numerous driving under suspensions, theft, disorderly conduct, criminal damaging, aggravated assault, resisting arrest, violating a protection order, domestic violence, and having weapons while under

disability. He previously had served two prison terms and, by one officer's count, had faced a total of 97 charges. As set forth above, the present incident involved an intoxicated Dixon fleeing from police in a Corvette traveling 100 miles per hour while running red lights in a residential area at 2:00 a.m. The trial court correctly observed: "Short of someone dying—and, again, a lot of people aren't sure why that didn't happen— this has to be one of the worst instances I have seen of somebody operating a vehicle while under the influence, fleeing and eluding from an officer, crashing and causing such extensive damage." (Hearing Tr. at 15-16).

{¶ 11} The harm to the victim in this case scarcely can be put into words. The trial court attempted to summarize the harm based on its review of more than 6,000 pages of medical records. It stated:

> * * * It's over 6,000 pages long. I couldn't read all of if it; but I did get through the list of surgeries that she's had to date, rather lengthy list of surgeries. I got through the list of the damages caused to her body, all of the broken bones, having to reattach her foot, for the most part, that was almost severed away, all of the trauma.
>
> 33 days in a coma. Jaw wired shut. When she wakes up, her jaw's wired shut, her right hand's in a cast, can't move her left arm because it was dislocated, couldn't feel anything from the waist down, several broken bones in her face, facial reconstruction, two artificial cheek bones, metal plate above her left eye. Jaw was broken in several places. 10 surgeries in the first 72 hours after the wreck. Both femur bones were broken, both knee caps, left tibia all replaced with rods. Left foot almost completely detached,

skin graft taken to reattach the foot, pelvis broken in three places, two screws now holding that together. Severed liver, parts of bowel ruptured, broken neck, traumatic brain injury, pituitary gland injuries. Can no longer have children.

That's a summary. I've read the medical records and actually goes out much longer than that in detail. Spent six months either in the hospital or nursing home, has regained some strength in her legs, not able to gain full mobility of her right hand, which makes daily activity very difficult. Her— what most of us consider a mundane activity such as writing, opening things, cooking, dressing, grooming, all that's a daily struggle for her now. Her medical bills at the time that this was written, about three-and-a-half million dollars and there is no proof of insurance anywhere.

(*Id.* at 7-8).

{¶ 12} The record contains equally compelling statements in the form of letters from the victim, her family, friends, and law-enforcement officers. Having reviewed that evidence, along with the sentencing transcript and the entire presentence-investigation report, we harbor no doubt that the record supports the trial court's consecutive-sentence findings that consecutive service is necessary to protect the public from future crime or to punish Dixon and that consecutive sentences are not disproportionate to the seriousness of his conduct and to the danger he poses to the public. The record also supports the trial court's additional finding under R.C. 2929.14(C)(4)(c) that Dixon's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime. Because the record supports that finding, we need not address whether

the record supports the trial court's alternative findings under R.C. 2929.14(C)(4)(a) and (b). Those findings were unnecessary in light of our determination that the trial court's finding under R.C. 2929.14(C)(4)(c) was proper.

{¶ 13} Finally, in addition to challenging his consecutive sentences, Dixon briefly argues that the trial court's imposition of maximum sentences was improper. His entire argument is as follows: "In this case, Mr. Dixon received two maximum sentences. The maximum sentence was not required and the only mandatory time was pursuant to count two which carried a minimum penalty of 60 days in jail. The offenses arose out of a single incident and therefore Mr. Dixon contends imposing two maximum [sentences] for the offenses was improper." (Appellant's brief at 4).

{¶ 14} In support of his argument, Dixon cites R.C. 2953.08(A)(1). But that provision merely identifies the circumstances under which a defendant may appeal a maximum sentence. Although the facts Dixon cites meet the statute's requirements to appeal his maximum sentences, we see no error in the trial court's decision to impose them. Unlike consecutive sentences, the trial court was not required to make any particular "findings" to justify maximum prison sentences. *State v. Whitt*, 2d Dist. Clark No. 2014-CA-125, 2016-Ohio-843, ¶ 8. As the Ohio Supreme Court recently explained in *Marcum*:

> We note that some sentences do not require the findings that R.C. 2953.08(G) specifically addresses. Nevertheless, it is fully consistent for appellate courts to review those sentences that are imposed solely after consideration of the factors in R.C. 2929.11 and 2929.12 under a standard that is equally deferential to the sentencing court. That is, an appellate court

may vacate or modify any sentence that is not clearly and convincingly contrary to law only if the appellate court finds by clear and convincing evidence that the record does not support the sentence.

*Marcum* at ¶ 23.

{¶ 15} In *Marcum*, the Ohio Supreme Court made clear that the standard contained in R.C. 2953.08(G)(2) applies to all felony sentencing-term challenges. Here the trial court properly considered the criteria found in R.C. 2929.11 and R.C. 2929.12, and the record does not clearly and convincingly fail to support its decision to impose maximum sentences. While a sentence also may be vacated under R.C. 2953.08(G)(2) if it is "contrary to law," Dixon makes no such argument in this case. In any event, we are unable to conclude that the sentences he received were contrary to law.

{¶ 16} Based on the reasoning set forth above, we overrule Dixon's assignment of error and affirm the judgment of the Clark County Common Pleas Court.

. . . . . . . . . . . . .


DONOVAN, P.J., and FROELICH, J., concur.


Copies mailed to:

Megan M. Farley
Jon Paul Rion
Nicole Rutter-Hirth
Hon. Richard J. O'Neill