[Cite as *State v. Thacker*, 2016-Ohio-5732.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 2015-CA-75 |
| | : | |
| v. | : | Trial Court Case No. 2015-CR-75 |
| | : | |
| DAVID M. THACKER | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 9th day of September, 2016.

. . . . . . . . . . .

STEPHANIE R. HAYDEN, Atty. Reg. No. 0082881, Assistant Greene County Prosecuting Attorney, 61 Greene Street, First Floor, Xenia, Ohio 45385
     Attorney for Plaintiff-Appellee

JEFFREY R. MCQUISTON, Atty. Reg. No. 0027605, 130 West Second Street, Suite 1818, Dayton, Ohio 45402
     Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} In this case, Defendant-Appellant, David Thacker, appeals from a judgment sentencing him to 30 months in prison for Attempted Felonious Assault and 12 months each in prison on two charges of Domestic Violence, with all terms to run concurrently, for a total of 30 months in prison. In support of his appeal, Thacker contends that the trial court failed to properly consider the statutory aggravating and mitigating factors in R.C. 2929.12, and that the record does not clearly and convincingly support the trial court's decision.

{¶ 2} We conclude that the trial court properly complied with the pertinent statutory factors governing sentencing, and we cannot find that the record clearly and convincingly fails to support the trial court's decision. Accordingly, the judgment of the trial court will be affirmed.

I. Facts and Course of Proceedings

{¶ 3} The charges against David Thacker arose from an attack that David made on family members on January 25, 2015. At that time, Thacker attempted to attack his father, D.T., with a knife. Other family members, T.T. and B.T., became involved in an attempt to subdue Thacker. On January 27, 2015, the Fairborn Municipal Court issued temporary protection orders for D.T., T.T., and B.T. Subsequently, Thacker was indicted on one count of Felonious Assault, a second-degree felony, and two counts of Domestic Violence, both fourth-degree felonies based on Thacker's prior conviction for Domestic Violence in Fairborn Municipal Court.

{¶ 4} On March 6, 2015, Thacker's appointed counsel filed a plea of not guilty by

reason of insanity and motion for a competency evaluation. Counsel then filed a motion for a second competency evaluation, after the first evaluator found Thacker was not within the definition of "mental retardation" in the Ohio Revised Code and that he was competent to stand trial. Attached to the motion were documents indicating that Thacker was within the "mild range of mental retardation" with a full scale IQ score of 63. However, Thacker demonstrated more significant attention and short-term memory deficits, and was not able to obtain competitive employment.

{¶ 5} A second mental evaluation was ordered, and Thacker was again found competent. On August 5, 2015, Thacker entered a guilty plea to Attempted Felonious Assault, a third-degree felony, and two fourth-degree felony Domestic Violence charges. As part of the plea agreement, the State recommended community control. At the plea hearing, Thacker was informed that the maximum punishment for the charges was 72 months in prison, zero of which was mandatory, and a $20,000 fine. The court then set a sentencing hearing in October 2015, and referred Thacker for a presentence investigation ("PSI").

{¶ 6} On October 21, 2015, the parties appeared for the sentencing hearing. At that time, Thacker presented several witnesses, including a custodian of records from the jail; Thacker's mother, Y.T.; Bobbie Fussichen, a psychiatric nurse practitioner from TCN Behavioral Services, who had treated Thacker before he was jailed and also treated Thacker while he was jailed pending resolution of the current charges; and Mark Moorman, a counselor employed by TCN Behavioral Services and stationed at the jail. Thacker also testified at the hearing.

{¶ 7} Y.T. indicated that Thacker had developmental and mental health disabilities.

He had been diagnosed as developmentally disabled in Kindergarten and currently functioned cognitively at about a third-grade level. He had suffered from depression since he entered puberty, and had paranoia and bipolar issues in additional to the developmental problems. Thacker had also exhibited delusional behavior. When he was medicated, he was easier to live with, but when he did not take his medication, he was a different person.

{¶ 8} Y.T. stated that on the day of the incident, Thacker came into the family's house with a knife and tried to attack his father. There was a physical altercation. D.T. was able to get a candlestick from the fireplace, and threw it at Thacker to divert his attention. While wrestling with Thacker, D.T. was able to get the knife away from him. An older son then restrained Thacker until the police arrived. Despite this incident, Y.T. stated that Thacker did not belong in prison.

{¶ 9} Fussichen had treated Thacker for several years. She indicated that he had multiple diagnoses, including a Schizoaffective Disorder; a "Bipolar type"; moderate alcohol use disorder; moderate Cannabis use disorder; post-traumatic stress disorder; and attention deficit hyperactive disorder. Thacker was on several medications, including Abilify, Tegretol, Trazadone, and Wellbutrin SR. Fussichen indicated that Thacker had never been aggressive towards her. She also said that no lock-down mental facilities were available, because such facilities do not exist. According to Fussichen, Thacker was not an imminent danger to himself or others, and was very vulnerable in a jail facility with the close proximity of others and the personalities that were there.

{¶ 10} Moorman had consulted with Thacker approximately 43 times while

Thacker was in jail. He indicated that Thacker had never been aggressive with him, and he described Thacker's mental health problems as "severe." Transcript of Proceedings, p. 51. Moorman stated that Thacker had been placed on suicide watch and had threatened suicide many times. He further stated that Thacker had been involved in disputes with other inmates. Thacker could get quite delusional at times, and believed people were plotting against him. His low intellectual functioning caused him to misread others and think other people were about to attack him. Moorman indicated that Thacker had been injured a number of times from these fights.

{¶ 11} According to Moorman, Thacker would not function well in the general prison population. Moorman expressed concern over Thacker going into a predatory environment in a prison population. He stated that TCN could offer various services if Thacker were placed on probation, including removing him from Fairborn, away from family members and bad friends and having him observed taking his medication. Moorman indicated that Thacker's failure to take medication and use of illicit drugs were the precipitating events in the criminal violations.

{¶ 12} Thacker identified a picture of himself in jail, with a black eye that resulted from a fight. He also identified another picture of himself with bruises from a fight. An employee from the Greene County Jail indicated that Thacker had been involved in fights at the jail, but had not threatened any staff or correction officers. This employee also indicated that in most of the incidents, Thacker was the individual who had been harmed.

{¶ 13} After hearing the testimony, the trial court continued the sentencing hearing to consider the evidence. On November 11, 2015, at the continued hearing, the court heard testimony from two family members who had been involved in the altercation.

Both said they did not think that Thacker should go to prison. The prosecutor did not examine any witnesses at the sentencing hearing, and said that the State recommended community control.

{¶ 14} The trial court then sentenced Thacker to 30 months on the Attempted Felonious Assault and 12 months on each Domestic Violence charge, and imposed the sentences concurrently, for a total of 30 months in prison. The court also added a notation to the sentencing entry, recommending that the warden attempt to admit Thacker into OASIS or a similar program at the earliest practical time. Thacker now appeals from his conviction and sentence.

## II. Imposition of Sentence

{¶ 15} Thacker's sole assignment of error states that:

The Trial Court Erred in Imposing a 30 Month Jail Sentence on the Defendant and Abused Its Discretion in Failing to Comply with the Pertinent Statutory Provisions Governing the Exercise of Discretion in Sentencing.

{¶ 16} Under this assignment of error, Thacker agrees that his assignment of error uses an incorrect standard of review, i.e., abuse of discretion. Thacker then argues, under the correct standard, that the record does not clearly and convincingly support the trial court's decision to impose a 30-month prison sentence, since there is a presumption of community control for fourth-degree felonies and no presumption for or against prison sentences for third-degree felonies. Thacker also argues that various factors in R.C. 2929.12 indicate that a prison sentence should not have been imposed.

{¶ 17} The Supreme Court of Ohio has held that we may not apply an abuse of

discretion standard when reviewing sentences. Instead, "an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, Ohio Sup. Ct. Slip Opinion No. 2016-Ohio-1002, ¶ 1, citing R.C. 2305.08(G)(2).

**{¶ 18}** "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. *Accord Marcum* at ¶ 22.

**{¶ 19}** " 'The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences.' " *State v. Armstrong*, 2d Dist. Champaign No. 2015-CA-31, 2016-Ohio-5263, ¶ 12, quoting *State v. King*, 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.). Before imposing sentence, however, trial courts are required to "consider the statutes that apply to every felony case. Those include R.C. 2929.11, which specifies the purposes of sentencing, and R.C. 2929.12, which provides guidance in considering factors relating to the seriousness of the offense and recidivism of the offender." *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38.

**{¶ 20}** R.C. 2929.11(A) provides that "[t]he overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to

punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." "The statutory 'seriousness' and 'recidivism' factors that guide a court's sentencing discretion are found in R.C. 2929.12." *State v. Dixon*, 2d Dist. Clark No. 2015-CA-67, 2016-Ohio-2882, ¶ 5.

{¶ 21} Under R.C. 2929.12, courts are to consider "the factors set forth in divisions (B) and (C) of this section relating to the seriousness of the conduct, the factors provided in divisions (D) and (E) of this section relating to the likelihood of the offender's recidivism, and the factors set forth in division (F) of this section pertaining to the offender's service in the armed forces of the United States and, in addition, may consider any other factors that are relevant to achieving those purposes and principles of sentencing."

{¶ 22} Thacker contends that of the nine mentioned factors in R.C. 2929.12(B), only one factor indicates that his conduct was more serious than conduct normally constituting his offenses. This factor is R.C. 2929.12(B)(6), which relates to the fact that "[t]he offender's relationship with the victim facilitated the offense." Thacker also notes that R.C. 2929.12(C)(3) indicates that his conduct was less serious than conduct normally constituting the offenses. This factor pertains to the fact that "[i]n committing the offense, the offender did not cause or expect to cause physical harm to any person or property."

{¶ 23} Thacker also focuses on R.C. 2929.12(C)(4), which provides that the court should consider, in deciding if an offender's conduct was less serious, that "[t]here are

substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense."

{¶ 24} Thacker is correct in pointing out that the State recommended community control, and that the evidence at the sentencing hearing indicates that he suffered from various mental health and developmental disabilities and would not fare well in prison. The trial court was well aware of these facts, but commented that its primary purpose was to protect the public. In this regard, the PSI Report indicated that Thacker "has extremely violent tendencies. His criminal history demonstrates the defendant is violent and ultimately a probation officer safety problem." PSI Report, p. 8. The report also noted that Thacker had stated that his alcohol use was a factor in his violent behavior. However, Thacker had been noncompliant while incarcerated and "had been involved in 6 physical altercations at Greene County Jail despite taking his medication as directed." *Id.*

{¶ 25} Thacker also had substance abuse problems, and had first become intoxicated in Kindergarten. He had been hospitalized twice for alcohol detoxification and admitted he often got in trouble while intoxicated. He had last consumed alcohol on the night of the offenses. *Id.* at p. 11. The PSI Report further noted that Thacker was not a candidate for the Greene Leaf Program because he could not be housed at the Adult Detention Center. *Id.* Finally, the probation department concluded that Thacker was not amenable to available community control sanctions. Again, the report emphasized Thacker's extremely violent tendencies, the criminal history indicating his violence and a probation officer safety issue, his involvement in altercations at the jail, and the fact that he was not a candidate for the Green Leaf Program.

{¶ 26} Unfortunately – as was noted in the sentencing hearing – no long-term mental health facilities exist. Thus, the trial court's only alternatives were to sentence Thacker to prison or to release him into the community, where there was no real guarantee that Thacker would continue to take his medication. Although TCN employees testified that they could observe Thacker take his medication daily, TCN was not a residential facility, and nothing prevented Thacker from simply deciding not to show up to take his medication. Once Thacker went off his medication, the danger to his family and the community would return. Notably, this was not the first situation in which Thacker attempted to harm someone.

{¶ 27} Furthermore, we disagree that R.C. 2929.12(C)(3) applies. In attacking his father with a knife, Thacker clearly expected to cause physical harm. In fact, the PSI report indicates that Thacker punched his father during the altercation, and also hit another victim, T.T., in the face.

{¶ 28} In a similar situation, we observed that "[a]s best we can discern from the record, the trial court faced a no-win choice between treatment without assured safety for the community and safety for the community without assured treatment." *State v. Armstrong*, 2d Dist. Champaign No. 2015-CA-31, 2016-Ohio-5263, ¶ 37.

{¶ 29} Regarding recidivism factors, Thacker argues that while he had prior misdemeanor convictions, none substantiate that he harmed the victims. We disagree. The reason that Thacker's two Domestic Violence charges were elevated to fourth-degree felonies is because of his prior conviction for Domestic Violence in Fairborn Municipal Court Case No. CRB 1400226, in violation of R.C. 2919.25(A). *See* Doc. #1, Indictment, Counts Two and Three, and R.C. 2919.25(D)(3).

{¶ 30} R.C. 2919.25(A) provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." Regarding criminal pleas, Crim.R. 11(B) provides that "[w]ith reference to the offense or offenses to which the plea is entered: (1) [t]he plea of guilty is a complete admission of the defendant's guilt."

{¶ 31} Accordingly, by pleading guilty to Counts Two and Three of the indictment, Thacker admitted that he was guilty of causing or attempting to cause harm to a family or household member on January 25, 2015, and that he had previously been convicted of causing or attempting to cause harm to a family or household member in the 2014 criminal case. While this technically may not mean that Thacker actually harmed his prior victim, it does mean, at the least, that he attempted to harm his prior victim.

{¶ 32} As a further matter, the PSI Report indicates that that Thacker had been convicted of Domestic Violence in 2014. PSI Report at p. 4. In addition, Thacker had prior convictions for resisting arrest and disorderly conduct in 2010; for criminal mischief in 2011; and for disorderly conduct by intoxication in 2013. *Id.* at p. 3. He received community control sanctions for all these violations, but reoffended by committing more severe crimes.

{¶ 33} Thacker also argues that he showed genuine remorse for his actions, which indicates that he is less likely to reoffend pursuant to R.C. 2929.12(E)(5). Thacker did tell the trial court that he was remorseful. However, this factor is not controlling, but is simply one point to be considered. Again, the trial court was cognizant of the safety of the public, including Thacker's family, and made the best decision it could in difficult circumstances. In view of our constrained power of review, we cannot find that the record clearly and convincingly fails to support the court's decision.

**{¶ 34}** Based on the preceding discussion, Thacker's sole assignment of error is overruled.

### III.   Conclusion

**{¶ 35}** Thacker's sole assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

DONOVAN, P.J. and FAIN, J., concur.

Copies mailed to:

Stephanie R. Hayden
Jeffrey R. McQuiston
Hon. Michael A. Buckwalter