[Cite as *State v. Kessel*, 2019-Ohio-1381.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27997 |
| | : | |
| v. | : | Trial Court Case No. 2014-CR-3136 |
| | : | |
| JACOB ANTHONY KESSEL | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 12th day of April, 2019.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHAEL J. SCARPELLI, Atty. Reg. No. 0093662, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
     Attorney for Plaintiff-Appellee

TYLER D. STARLINE, Atty. Reg. No. 0078552, 202 North Limestone Street, Suite 250, Springfield, Ohio 45503
     Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

**{¶ 1}** This matter is before the Court on the May 15, 2018 Notice of Appeal of Jacob Anthony Kessel. Kessel appeals from the trial court's May 8, 2018 judgment entry, finding that Kessel had violated the conditions of his community control sanctions and imposing a sentence of 12 months on each of two counts, possession of cocaine and possession of heroin, to be served consecutively. We hereby affirm the judgment of the trial court.

**{¶ 2}** On October 29, 2014, Kessel was indicted on one count of possession of cocaine (less than five grams) and one count of possession of clonazepam; each offense was a felony of the fifth degree in violation of R.C. 2925.11(A). Kessel pled not guilty on November 13, 2014. On November 24, 2014, Kessel filed a motion for intervention in lieu of conviction (ILC).

**{¶ 3}** On December 31, 2014, the trial court found that Kessel was eligible for ILC, "having tendered a plea of guilty to" possession of cocaine, and it stayed all criminal proceedings; the court ordered Kessel to complete treatment at Eastway and imposed other conditions of ILC.

**{¶ 4}** On March 23, 2015, the trial court was informed that Kessel had been arrested on March 16, 2015 for theft. In June 2015, the probation officer reported that Kessel's whereabouts had been unknown since April 3, 2015, and a capias was issued. A notice of alleged violations of community control was also issued, asserting that Kessel was "declared an absconder from the Probation Department"; his case with Eastway had

been closed; and he had been cited for disorderly conduct. The court found that the circumstances did not justify a violation of community control and reinstated community control sanctions, including ILC.

{¶ 5} On August 11, 2015, Kessel's probation officer notified the court that he had been arrested on August 9, 2015, for possession of drugs and possession of drug paraphernalia. On August 19, 2015, the trial court issued a notice of an ILC revocation hearing, which stated that Kessel had failed to refrain from violating of the law, and had not informed his probation officer of his arrest; failed to obtain employment; failed to comply with his child support order; and had used or possessed controlled substances. Specifically, the notice provided that, on August 11, 2015, Kessel had admitted to the use of benzodiazepines, methamphetamine and opiates, and that he had failed to comply with treatment at Eastway on two occasions and with "outpatient treatment at SAMI." A hearing was scheduled for September 2, 2015.

{¶ 6} On September 1, 2015, Kessel was charged by a bill of information with one count of possession of heroin (less than one gram), in violation of R.C. 2925.11(A), a felony of the fifth degree. Kessel waived indictment and pled guilty to possession of heroin on September 2, 2015. On September 3, 2015, the trial court initially continued Kessel on supervision and ordered him to complete drug intervention at S.T.O.P. However, later that same day, it "having come to the attention of the Court that [Kessel] was unsuccessful at completing the drug treatment program outlined by the Court," the court revoked ILC.

{¶ 7} On September 10, 2015, the court issued a judgment entry of conviction for the offenses of possession of cocaine and possession of heroin. The court sentenced

Kessel to community control sanctions for a period not to exceed five years, with "ILC specific conditions for a period of not less than one year."

{¶ 8} On April 29, 2016, the court issued a capias for Kessel's arrest because the community control officer informed the court that his whereabouts had been unknown since January 20, 2016. On May 24, 2016, a notice of a community control revocation hearing was issued. The notice provided that Kessel had failed to follow the law and to notify his probation officer upon his arrest; failed to obtain employment; failed to comply with his child support order; failed to report to probation as ordered; and tested positive for benzodiazepine and methamphetamine at a December 21, 2015 urinalysis. He was ordered to report to the probation department by June 20, 2016, to obtain a court date, but he did not do so.

{¶ 9} On July 15, 2016, the court issued a capias for Kessel on the basis that his whereabouts had been unknown since June 17, 2016. Kessel was arrested on July 24. On July 29, 2016, the court reinstated Kessel to community control, with the requirement that he successfully complete the MonDay Correctional Program.

{¶ 10} On August 21, 2017, the court again issued a capias for Kessel's arrest, because his whereabouts had been unknown to his probation officer since April 26, 2017. On September 14, 2017, a notice of a community control revocation hearing was issued. The violations cited included that Kessel had failed to maintain and verify employment and attend the Goodwill Easter Seals employment class; had been declared an absconder for the fourth time; and had failed to provide urinalysis screens and follow through with aftercare treatment. After a hearing, the court reinstated Kessel's community control, with the requirement that Kessel be placed on intensive supervision

with the drug court.

{¶ 11} On November 16, 2017, the court issued a capias for Kessel's arrest due to his failure to report to probation; his whereabouts had been unknown since October 30, 2017. On December 11, 2017, the court reinstated Kessel's community control and ordered him to remain in custody to enter and complete the Nova Morningstar residential treatment program and complete any recommended aftercare.

{¶ 12} On April 17, 2018, the court issued a notice of a community control revocation hearing. The notice stated that Kessel had been arrested on February 27, 2018 by Huber Heights police for possession of drugs, and that he failed to advise his probation officer of his arrest; failed to verify employment; failed to report to probation on March 22, 2018, as scheduled; admitted to using or tested positive for multiple illegal substances on February 15, 2018 and March 15, 2018, and recently admitted to using and tested positive for methamphetamine and ecstasy in the Montgomery County Jail after being incarcerated for 17 days; failed to comply with his case plan and child support orders; and refused to comply with the MonDay program on April 13, 2018.

{¶ 13} A hearing was conducted on April 25, 2018. The following exchange occurred:

> THE COURT: * * * This is State of Ohio versus Jacob Kessel, Case
>
> 2014-CR-3136. My understanding, you've hired private counsel?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: * * * And that is?
>
> THE DEFENDANT: Patrick Flanagan.
>
> THE COURT: We can set this over for a week. * * *

DEFENSE COUNSEL: Do you want me to do the reading, Your Honor? Since it's the revocation. The first reading?

THE COURT: Right. Because we continued it - - that would be a good idea.

DEFENSE COUNSEL: * * * At this time, we would like to acknowledge receipt of the notice of revocation, waive the formal reading and waive the evidentiary hearing, enter a general denial at this time and ask for a one-week continuance, Your Honor.

THE COURT: * * * If you would sign the continuance and if you would call Mr. Flanagan's office, either him or - -

DEFENSE COUNSEL: Mr. Calhoun?

THE COURT: - - Jimmy Calhoun. And if they verify that they represent Mr. Kessel and put on a notice of appearance then you can withdraw otherwise we'll see you again next week.

DEFENSE COUNSEL: * * * Thank you Your Honor.

**{¶ 14}** No notice of appearance by counsel retained on behalf of Kessel was filed. Attorney Marshall Lachman appeared on Kessel's behalf at the May 2, 2018 hearing.[1]

**{¶ 15}** The transcript of the May 2 hearing was not initially submitted to this court, although a praecipe filed on May 15, 2018, indicated that Kessel's attorney had requested transcripts related to the probation revocation hearings held on April 18, 2018, April 25, 2018, and May 2, 2018. Initially, only the April 25, 2018 hearing was transcribed. On

---

[1] We note that neither the prosecutor nor defense counsel was identified by name in the transcript of the April 25, 2018 hearing.

July 23, 2018, Kessel filed a motion to supplement the incomplete record with additional transcripts, to which the praecipe was attached. Kessel's attorney asserted that, "through an oversight," the April 18 and May 2 transcripts had not been prepared, and that "[f]or the record before this court to be complete, all three transcripts are needed." This court sustained the motion to supplement the record on July 27, 2018. The transcript of the May 2, 2018 hearing was filed in this court on August 10, 2018.

{¶ 16} However, on November 7, 2018, the State filed a motion to correct the record pursuant to App.R. 9(E), which was addressed to the transcript of the May 2, 2018 sentencing hearing, filed on August 10. The State's motion provided:

At the beginning of the transcript of the May 2, 2018 drug court hearing, a sidebar takes place before the trial court proceeds to sentencing. The transcriptionist states that the sidebar could not be transcribed because of static or white noise. However, the State has reviewed the video recording of the hearing, and the discussion between the court, the prosecutor, Appellant's trial counsel, and a probation officer at the sidebar is perfectly clear. The discussion lasts several minutes, and the statements made are material to the issues raised in Appellant's assignments of error. Therefore, the State respectfully asks that this Court order the transcript of May 2, 2018 to be supplemented to include a full transcription of the sidebar.

Additionally, the transcript of the May 2, 2018 hearing indicates that the Honorable Dennis J. Langer presided. However, based upon viewing the video recording of the hearing, it is clear that the Honorable Timothy N.

O'Connell was the presiding judge. Therefore, the State respectfully asks that this Court order the transcript be corrected to reflect that Judge O'Connell conducted the sentencing hearing.

{¶ 17} On November 28, 2018, this Court overruled the State's motion to correct the record but remanded the matter for the trial court to consider the issue. On December 3, 2018, the State filed a motion to correct the record in the trial court, again addressed to certain aspects of the transcript of the May 2 hearing. On December 27, 2018, the trial court sustained the State's motion to correct the record. The court ordered "that [the] sidebar be transcribed and made a part of the record of that hearing," and the court corrected the record to reflect that the May 2, 2018 hearing was "held in front of the Honorable Timothy N. O'Connell, not the Honorable Dennis J. Langer as set forth on the written transcription."

{¶ 18} Thus, there are two transcripts of Kessel's sentencing hearing in the record before us. The first transcript was filed on August 10, 2018; it does not contain a date of the hearing on the cover page, but it is dated "November 10, 2016, 4:21 pm" at the top of the first page. This transcript is captioned "Transcript of Proceedings (Drug Court)." In the transcript, after the court identifies the case, the transcript indicates, "(Sidebar held but not able to be transcribed due to white noise.)" Kessel's sentencing follows. A transcript dated May 2, 2018, was filed on January 7, 2019; this transcript is captioned "Transcript of Proceedings (Sentencing)," and it includes the sidebar omitted from the transcript filed on August 10, 2018. Both transcripts erroneously reflect that Judge Langer presided at the hearing. The transcript dated May 2, 2018, reflects the following exchange:

(At sidebar)

[DEFENSE COUNSEL] MR. LACHMAN: I talked to him and he's (indiscernible). I know I have no leverage. If there's, the Court - - if there's any way we can do 18 months less 12 months (indiscernible) he won't appeal separate sentences (indiscernible).

(Indiscernible) in any event, but when sentence of the Court proceeds with the (indiscernible) it's less than 355 days of jailtime credit, we will file an appeal. So he's telling me if the State will agree to an 18-month sentence (indiscernible).

[PROSECUTOR]: I don't know (indiscernible) today. I can't (indiscernible) right now. I mean I - -

MR. LACHMAN: (Indiscernible) how she feels about (indiscernible).

[PROSECUTOR]: I think I would be opposed to that just in the sense of how much jailtime credit he has.

THE COURT: (Indiscernible)

UNIDENTIFIED SPEAKER: Yes.

THE COURT: He's kind of threatening an appeal because we're doing this consecutive.

UNIDENTIFIED SPEAKER: Okay.

THE COURT: Which - -

MR. LACHMAN: If he says that if he would get 18 months less the 355 (indiscernible) jail time credit (indiscernible) a, he wouldn't appeal, and b, (indiscernible) six months so (indiscernible) time. (Indiscernible) the

question that the Court has (indiscernible) probation I asked the Court to ask (indiscernible) the State (indiscernible).

[PROSECUTOR]: You're in agreement (indiscernible)?

UNIDENTIFIED SPEAKER: No.

[PROSECUTOR]: You're not?

[DEFENSE COUNSEL] LACHMAN: (Indiscernible) jumping up and down saying she (indiscernible).

UNIDENTIFIED SPEAKER: I mean, yeah, he's been given multiple opportunities over and over and over, and, like I said, I went to bat for him when (indiscernible) and said, hey, you know, let's keep - - first of all, I got him released from jail with the first detainer to get him into treatment. Then I advocated for, you know, a COR bond and he basically was like (indiscernible). So, I mean it's ultimately up to you. I know Judge was planning to do the 12 months. Do we want to continue it for a week?

MR. LACHMAN: I'll double check with him. I (indiscernible) he said (indiscernible). So (indiscernible) check that and (indiscernible) to go forward. I would object on the (indiscernible) consecutive sentences and if that (indiscernible) is a first-time offender (indiscernible).

UNIDENTIFIED SPEAKER: Felony - - I think - - I don't think so.

MR. LACHMAN: (Indiscernible) the original (indiscernible).

UNIDENTIFIED SPEAKER: No, hu-huh. And I can go look - - well, I was going to say, it's in his (indiscernible) in here.

[PROSECUTOR]: Yeah.

MR. LACHMAN: (Holding hand over microphone and talking)

UNIDENTIFIED SPEAKER: We wouldn't be here if he would have just said yes to MonDay, but now he knows we're serious he's like (making movements) backtracking. No.

THE COURT: (Indiscernible)

UNIDENTIFIED SPEAKER: Yes. This is his only - - yeah.

THE COURT: He had no prior felonies. He had one prior misdemeanor.

(The Court and Mr. Lachman whispering to each other from 4:25:29 to 4:25:58)

UNIDENTIFIED SPEAKER: But he's also been on probation for three years and we've tried to work with him.

[PROSECUTOR]: (Indiscernible)

UNIDENTIFIED SPEAKER: Huh?

[PROSECUTOR]: (Indiscernible)

UNIDENTIFIED SPEAKER: (Shaking head) I didn't get him. I just got him last year.

[PROSECUTOR]: Okay.

UNIDENTIFIED SPEAKER: He was under other supervision.

[PROSECUTOR]: I guess I don't (holding hand over microphone and talking)

MR. LACHMAN: Okay.

(End sidebar)

**{¶ 19}** The court then asked the attorneys to identify themselves for the record, and defense counsel asked, "Has there has been an initial reading on this?" The prosecutor responded, "Yes, last week." Defense counsel advised the court that he spoke to Kessel and that "he's going to admit that he violated Rule Number 1 in that he shall refrain from violation of any law, federal, state and city. And get in touch with his probation officer if arrested or questioned by law enforcement in that he was arrested on February 27, 2018 by Huber Heights Police for possession of drugs and failed to advise his probation officer." In response to a question by the court, Kessel admitted the violation, and he indicated in part, "I'm willing to do the time I have to do and just become a better person at the end."

**{¶ 20}** Defense counsel argued as follows:

* * * First of all, according to the revocation that was filed on April the 17th through today's date, Mr. Kessel is entitled to 355 days of jailtime credit. We would - - this is, as I understand it, Mr. Kessel's first felony offenses as an adult, possibly as a juvenile. I'm not sure of his juvenile record. But I understand this is his first felony offense, period. I would object to the imposition of any kind of consecutive sentences given that we're talking two possession charges - - possession of cocaine, possession of heroin. * * * I'm not sure why he wasn't eligible at the time if he didn't get intervention in lieu of conviction, but I - - just given the purposes and principles of sentencing, given the current status of first-time offenders on these type of offenses, I believe that the imposition of consecutive sentences, let alone the imposition of mandat [sic] - - (cell phone ringing)

consecutive mandatory - - of maximum consecutive sentences is in violation of the statutes of the state and would object to the imposition of them.

And should the Court send Mr. Kessel to prison, bearing in mind that he has served nearly a year in prison in secure detention, be it through MonDay, Nova, Morning Star, Nova, Morning Star again, STOP, he has done nearly a year in custody. Should the Court impose a prison sentence, we would ask for a reasonable (indiscernible).

**{¶ 21}** The court responded:

* * * Based on the information the Court has through the file and also considering the statements, considering the purposes and principles of sentencing as set forth in ORC 2929.11, considering the seriousness and recidivism factors as set forth in ORC 2929.12, including but not limited to the following: with respect to seriousness there are more serious factors and there are less serious factors, and I think in this case the less serious factor applies. These are non-violent offenses.

With regard to recidivism, there's recidivism more likely and recidivism less likely. Generally speaking, Mr. Kessel, you - - I think less likely factor applies. You have no prior adult felony convictions. You have one prior adult misdemeanor conviction. At least that was the situation at the time you initially were sentenced on this.

* * *

Now, despite that or even considering that, and Mr. Lachman makes some good points. However, your situation may be a little different than a

typical person being sentenced on two felony 5 drug counts - - possession counts - - because you've been under supervision since September of 2015, and a lot of effort has been made to try to get you into recovery, keep you in recovery, and have you move forward with a constructive lifestyle, and there's been lots of problems. And I understand about relapse to some degree, and it maybe comes with the territory, but you have a very lengthy history with I believe a number of non-compliances with treatment, failures to report, failures to come to court, failures to report to your officers, and a lot of positive urinalysis. So, I think in this case we do make a sentence that I might not make under other circumstances for other people at another time.

The Court will sentence in this case, and also I think it's important to understand that in this drug court, specialty court situation, part of it is responsibility or consequences. Consequences come for improper behavior, and sometimes we have to stand strong on that principle. That there will be a consequence for improper behavior.

So, in 14-CR-3136 on Count I, the Court sentences Jacob Anthony Kessel to a term of 12 months CRC. Also order on Count II that he serve a term of 12 months CRC, and that term is to be served consecutive - - those terms are to be served consecutive to each other for an aggregate term of 24 months.

The Court, requiring the defendant to serve prison terms consecutively, finds that given the entire history of the case that consecutive

service * * * is necessary to punish the defendant. That consecutive sentences are not disproportionate to the seriousness of the defendant's conduct and to the danger the defendant poses to the public. And that the defendant's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the defendant.

And part of the analysis here is that when one is addicted. This Court is of the view that there's nothing - - that's an illness. It's not a moral failing, but when you are addicted there's a high risk of engaging in criminal behavior to support that addiction. A high percentage of our cases in this court, forgeries, thefts, issues of credit cards, breaking and entering, burglaries are as a result of drug addiction. So, there is a danger to the community when one is addicted and particularly when one is not pursuing a treatment plan, not in recovery, not working for recovery and not staying in recovery. And I think the history here is Mr. Kessel has not worked hard enough to be in recovery, get in recovery, stay in recovery. So, there's a danger to the public that to support the addiction, crimes will be committed against persons. Now - - person's property probably. I'm not saying violent crimes.

* * *

You are eligible for shock incarceration on [sic] intensive program prison. Based on the purposes and principles of sentencing, the seriousness and recidivism factors, I will say that we've made those

findings, we've ordered a consecutive sentence. And those weigh on one side of the scale. As I mentioned on the seriousness and recidivism factors, the less serious factor applies, and recidivism is less likely by virtue of your record. And as I've mentioned, we have this concern about future criminal activity because of the addiction. * * *

Now, let me - - we had indicated before that if Mr. Kessel had been willing to go to MonDay, that would have been acceptable? Or am I confusing his case with - -

UNIDENTIFIED SPEAKER: No. We had offered him Monday. (Indiscernible) was on board with it until he refused it. Then there were the issues in jail, which kind of took it off the table at that point.

THE DEFENDANT: That's why - - 'cause (indiscernible) it together (indiscernible).

UNIDENTIFIED SPEAKER: Yeah. No. I mean, because of what I told you about what happened when he was incarcerated, that was kind of taken off the table. Additionally now, he may have another case coming through for the February arrest, so it's just kind of piled onto one another.

THE DEFENDANT: I was just defending myself in that case. I got it - - the police got it all on camera and all that.

THE COURT: Well, this may all be superseded by what happens in future charges and your federal situation. But, maybe at some future time you might have a different idea about what you want to do regarding treatment. It appears up to now you did not want to pursue it.

So, the court is going to not disprove placement. The Court will recommend placement if they come to you and if you become - - a place is available for shock incarceration or intensive program prison.

\* \* \*

{¶ 22} We note that on May 4, 2018, two days after the actual disposition, attorneys Patrick Flanagan and James Calhoun filed a motion for a continuance, requesting a one week continuance of Kessel's sentencing that was set in this matter for Wednesday, May 2, 2018. The motion stated:

The undersigned counsels were retained to try and help Mr. Kessel in this case and Mr. Flanagan has met with the Defendant on numerous occasions. Mr. Flanagan was supposed to be in court with the Defendant on this sentencing date, however he was unable to be there at that time. Mr. Flanagan has talked to Judge O'Connell, as the sitting Judge for Drug Court on May 2, and it is Mr. Flanagan's understanding that the sentencing would be reset for May 9 so that Mr. Flanagan can ask the court to consider the Mon[D]ay program for the Defendant.

{¶ 23} The trial court filed its judgment entry on May 8, 2018, without commenting on the motion for a continuance. Defense counsel Lachman filed Kessel's notice of appeal on May 15, 2018.

{¶ 24} Kessler asserts two assignments of error herein. His first assignment of error is as follows:

APPELLANT KESSEL WAS PREJUDICED BY THE TRIAL COURT'S VIOLATION OF MONT. CO. C.P.R. 1.19(B) AND 3.12(E) WHEN

AN ALTERNATE JUDGE, WHO WAS NEITHER ORIGINALLY ASSIGNED TO THE CASE NOR THE SPECIFICALLY ASSIGNED DRUG COURT JUDGE, ERRONEOUSLY PROCEEDED TO SENTENCE APPELLANT KESSEL.

**{¶ 25}** Kessel asserts that he "has been prejudiced by several inexplicable substitutions of jurist and defense counsel, unfortunately resulting in [his] being incarcerated for a twenty-four month maximum, consecutive prison sentence." Kessel argues that several procedural irregularities demonstrate that the criminal justice system "failed in this case," and the maximum, consecutive prison sentence must be reversed and remanded for a new sentencing hearing. Kessel asserts that, procedurally, he should have only been sentenced by the assigned judge, namely Judge Gorman.

**{¶ 26}** Kessel asserts that the record does not show that the case was transferred from Judge Gorman, the "assigned Judge," to Judge Langer, "an alternate Judge" -- due to Judge Gorman's unavailability or for any other reason – that authorized Judge Langer to hear motions or proceedings in the case.[2]

**{¶ 27}** Kessel argues that the record clearly shows that the trial court violated multiple provisions of the Montgomery County Local Rules, and this court should therefore find that "the alternate Judge" was without legal authority to conduct the sentencing hearing on May 2, 2018 and that Kessel was prejudiced by the involvement of an alternate judge.

**{¶ 28}** Kessel argues that this Court has previously been presented with the issue

---

[2] We note that Kessel's brief was filed prior to the trial court's December 27, 2018 entry correcting the name of the judge presiding at sentencing.

of an alternate Judge conducting a sentencing hearing in *State v. Johnson*, 2d Dist. Montgomery No. 26032, 2014-Ohio-4506, but the concerns raised in that case "were not manifest enough to warrant reversal." According to Kessel, Judge Froelich's concurring opinion in *Johnson*, however, highlighted concerns about the trial court "violating Mont. Co. C.P.R. 1.19." According to Kessel, in "this case, the procedural and prejudicial error is even more manifest" than in *Johnson*, because the trial court violated not only the provisions of Mont. Co. C.P.R. 1.19, but also the provisions of Mont. Co. C.P.R. 3.12 relating to drug court cases.

{¶ 29} Kessel argues that, while the State may assert that he waived his argument by failing to object, "the procedural posture of this particular case should overrule the 'waiver' argument." He suggests that his defense attorney at the May 2 hearing "had only just appeared as counsel of record (again, the record is unclear how such a substitution of counsel happened)" and that defense counsel Lachman "[did] not appear in the record of the prior hearing on April 25."[3] Finally, according to Kessel, the "unauthorized substitution of the judge" was not apparent from the docket, and it was "plainly prejudicial" for the trial court to violate multiple provisions of its own local rules.

{¶ 30} The State responds that Judge Gorman's lack of participation at Kessel's sentencing hearing does not entitle him to relief, because he did not object "to any alleged procedural irregularities" and therefore waived this argument. The State also argues that Kessel fails to articulate how he was prejudiced by the violation of any rule of court in this case. The State notes that "Kessel was offered the choice of continuing the case an additional week" after his counsel communicated an offer of an agreed 18-month

---

[3] As noted above, the defense attorney is not identified in the record on April 25, 2018.

sentence in exchange for Kessel's foregoing an appeal; the fact that Kessel did not accept the continuance "tends to suggest that Judge Gorman's absence from the hearing was not, in fact, an issue for Kessel." Finally, according to the State, "Kessel points to nothing in the record to support the notion that he suffered any actual prejudice, *i.e.* that Judge Gorman would have given him a more lenient sentence if she had presided at the sentencing hearing. In fact, the record suggests that the opposite was true," because at sidebar, Kessel's probation officer indicated that it was her understanding that Judge Gorman was going to impose consecutive 12-month prison terms.

{¶ 31} Mont. Co. C.P.R. 1.19 governs the assignment system for civil and criminal dockets. Mont. Co. C.P.R. 1.19(B)(2)(a) provides: "Except as provided in Subsection (B)(2)(b) of this Rule, all criminal cases shall be randomly assigned to the Judges of the Court upon the approval of felony charges by the prosecuting attorney. * * *." Mont. Co. C.P.R. 3.12 governs drug court. Mont. Co. C.P.R. 3.12(A) provides in part: "Drug court is created pursuant to the specialized docket set forth in Sup.R. 36.20-36.28, including Appendix I. The purpose of Drug Court is to facilitate efficient and effective treatment of drug addicted or drug abusing offenders." Mont. Co. C.P.R. 3.12(E) applies to sentencing and provides:

> After a defendant is ordered to drug court as a community control or ILC sanction, along with any other appropriate sanctions, the case shall be transferred to the Drug Court Judge for any and all further proceedings. The Drug Court Judge shall have the authority to conduct arraignments, accept pleas, enter findings and disposition, revoke community control or ILC, and order or modify community control or ILC sanctions.

{¶ 32} In *Johnson,* 2d Dist. Montgomery No. 26032, 2014-Ohio-4506, Johnson argued that "the trial court erred in proceeding to sentencing without the 'assigned judge.'" *Id.* at ¶ 2. This Court found no "error in the sentencing judge's failure to ask Johnson if he wanted a continuance," and further determined that "[i]t is pure speculation whether the originally assigned judge would have imposed a shorter sentence." *Id.* at ¶ 13. The concurring opinion in *Johnson*, to which Kessel directs our attention, provided as follows:

> I agree with the majority that the record sufficiently reflects that the sentencing was done by a different judge than the one who took the plea. This raises concerns with both Montgomery County C.P.R. 1.19 and Crim.R. 25. Crim.R. 25(B) "inferentially commands that unless unable to do so, the judge who presided at the criminal trial must also preside at the post-conviction proceedings, including sentencing." *Beatty v. Alston*, 43 Ohio St.2d 126, 127, 330 N.E.2d 921 (1975). See also *People v. Childress*, --- P.3d ---, 2012 WL 2926636 (Colo.App.), interpreting an almost-identical C.P.R. 25.

> Although the sentence was after a consideration of the PSI and was within the range agreed upon at the plea, perhaps counsel or the appellant only entered into the plea and sentencing agreement based on his or their anticipation of what sentence the particular judge (who accepted the agreement) would impose.

> Regardless, the appellant and counsel both were aware that sentencing was occurring before a different judge (in this regard, it is

possible that their 'opinion' as to what *this* judge would do was more favorable). There was no objection and there is no suggestion of plain error or prejudice on this record. The appellant waived any error. *State v. Pecina*, 76 Ohio App.3d 775, 603 N.E.2d 363, 365 (6th District 1992).

*Id.* at ¶ 15-17 (Froelich, J., concurring).

**{¶ 33}** It is well-settled that failure to object waives all but plain error. *State v. Bahns*, 185 Ohio App.3d 805, 2009-Ohio-5525, 925 N.E.2d 1025, ¶ 25 (2d Dist.), citing *McBride v. Quebe,* 2d Dist. Montgomery No. 21310, 2006-Ohio-5128. "Plain error exists 'if the trial outcome would clearly have been different, absent the alleged error in the trial court proceedings.' " *Id.*, citing *State v. Rollins*, 2d Dist. Clark No. 2005-CA-10, 2006-Ohio-5399.

**{¶ 34}** As did the concurring opinion in *Johnson*, we conclude that Kessel "waived any error" herein by failing to object to Judge O'Connell's imposing sentence. We cannot find, on this record, that Judge Gorman would have necessarily imposed a shorter sentence. Although an "unidentified speaker" mentions 12 months at the disposition, this individual makes the statement within the context of a consecutive sentence discussion, wherein defense counsel argued for an 18-month sentence and foregoing an appeal. Furthermore, this "unidentified speaker" cannot be said to speak on behalf of or bind Judge Gorman. Furthermore, we know that Kessel already had 355 days of jail time credit toward any prison term upon revocation, rendering it highly improbable the court would essentially sentence him to 10 days at ODRC. Kessel was given multiple opportunities in treatment to no avail, and he advised the court that he was "willing to do the time I have to do." Furthermore, through counsel, he declined to wait a week to

appear before Judge Gorman when that suggestion was made. In other words, prejudice is not demonstrated. Accordingly, Kessel's first assignment of error is overruled.

{¶ 35} Kessel's second assignment of error is as follows:

APPELLANT KESSEL WAS PREJUDICED BY THE INEFFECTIVE ASSISTANCE OF COUNSEL WHEN AN UNFAMILIAR SUBSTITUTE DEFENSE ATTORNEY APPEARED ONLY FOR THE SENTENCING HEARING.

{¶ 36} Kessel argues that, if this court finds that the alleged error was waived, it should also find "that the waiver [was] the result of ineffective assistance of defense counsel in not timely raising the issue." Kessel argues that, notwithstanding "over four years of procedural history * * *, with numerous court entries in the docket," defense counsel Lachman attempted to proceed with sentencing without familiarizing himself with details of the case, such as whether the initial reading on the probation revocation had occurred, that Kessel had initially been granted ILC, and whether Kessel had been in the MonDay program. Kessel asserts, based on the transcript of the May 2, 2018, hearing, that Lachman "was objectively unprepared to effectively advocate" for Kessel. Accordingly to Kessel, the "alternate Judge * * * showed an unfamiliarity with the entirety of the procedural history of the case" and "articulated an opportunity" for Kessel to seek another possible treatment option rather than not prison, but Lachman "missed the opportunity to advocate for MonDay," even though "Judge Langer" indicated that " ' if Mr. Kessel had been willing to do to MonDay, that would have been acceptable.' " Kessel asserts that, based on the record before this Court, the first and second *Strickland* prongs

should be found, thereby satisfying the test for ineffective assistance of counsel.

{¶ 37} The State responds that, "[a]ssuming for the sake of argument that it was objectively unreasonable for counsel to fail to raise a timely objection on this issue, Kessel cannot establish that he suffered prejudice," because "any argument that Judge Gorman would have imposed a sentence that was more favorable to Kessel is pure speculation, and the record tends to refute this idea." The State notes that defense counsel Lachman requested a sidebar at the start of the hearing, argued on behalf of Kessel for the sentence Kessel desired, and argued against maximum consecutive sentences based upon Kessel's lack of significant criminal history and the fact that his offenses were fifth degree felonies. The State asserts that Lachman's reference to "a lack of 'leverage' " indicated a general understanding of the procedural history of Kessel's case; Kessel had been on supervision for multiple years, had violated the terms of his supervision multiple times, and was subjected to additional conditions on each occasion as a result. Accordingly, the State asserts that "there was very little for counsel to argue at the time of the May 2 hearing as to possible alternatives to imprisonment."

{¶ 38} The State notes that the record belies Kessel's argument regarding the MonDay program and "suggests that Kessel was interested only in avoiding a maximum aggregate prison sentence, not avoiding prison all together." The State asserts that, given Kessel's history, "the only strategy that had any real likelihood of success was for counsel to do precisely what he did at the May 2 hearing: argue for concurrent sentences and/or non-maximum sentences, because Kessel's 355 days of credit would mean a relatively short stint in prison." The State argues that Lachman's performance at the hearing was more than adequate, even if he did not know all the specifics of the case

history.

**{¶ 39}** Finally, the State points out that the May 2, 2018 hearing was not Kessel's original sentencing hearing for his two offenses; that occurred in September 2015. The State notes that "the revocation that sparked the May 2 hearing was not Kessel's first one; rather, it was the final of several revocations that had been filed against him over the course of the case." According to the State, Kessel "fails to identify anything in the record that would suggest there was a reasonable probability that the trial court would have kept him on community control if his trial counsel would have argued more forcefully for the MonDay program."

**{¶ 40}** As this Court has previously noted:

In order to prevail on a claim of ineffective assistance of counsel, a defendant must show both deficient performance and resulting prejudice. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), paragraph two of the syllabus; *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. Two elements must be demonstrated: 1) that counsel's representation fell below an objective standard of reasonableness; and 2) that counsel's errors were serious enough to create a reasonable probability that, but for the errors, the outcome of the proceeding would have been different. *Id.* In our review of an ineffective assistance of counsel claim, "we will not second-guess trial strategy decisions, and 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' "

*State v. Hartman*, 2016-Ohio-2882, 64 N.E.2d 519, ¶ 45 (2d Dist.), quoting *State v. English,* 2d Dist. Montgomery No. 26337, 2015-Ohio-1665, ¶ 10.

**{¶ 41}** We agree that ineffective assistance of counsel is not demonstrated. Having determined above that Kessel was not prejudiced by Judge O'Connell's imposing sentence, we cannot conclude that the failure to object to Judge Gorman's absence at sentencing constituted ineffective assistance of counsel. As noted above, defense counsel Lachman relayed Kessel's wishes to the court, and he argued against maximum, consecutive sentences. We cannot conclude that Lachman was "objectively unprepared," as Kessel asserts, or that his performance was deficient. It was significant to the court in sentencing Kessel that he demonstrated an ongoing lack of commitment to treatment, and that his addiction posed a risk to the public. While Kessel asserts that the MonDay program was "supposedly refused," we note that Kessel was ordered to successfully complete the MonDay program on July 29, 2016, and the April 17, 2018 revocation notice stated that Kessel refused to comply with the MonDay program on April 13, 2018. The "unidentified speaker" advised the court that "issues" at the jail "kind of took [the MonDay program] off the table." We cannot conclude that defense counsel "missed the opportunity to advocate for MonDay," or that had he done so, a prison term would not have been imposed, and counsel did ensure that a first reading of the revocation had occurred. Kessel has failed to demonstrate that he was prejudiced by his representation.

**{¶ 42}** For the foregoing reasons, Kessel's second assignment of error is overruled.

**{¶ 43}** The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and FROELICH, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Michael J. Scarpelli
Tyler D. Starline
Hon. Barbara P. Gorman