[Cite as *Delp v. Delp*, 2019-Ohio-4897.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Bradley Delp

        Appellant

v.

Cleves Delp

        Appellee

Court of Appeals Nos. L-18-1181
L-19-1008

Trial Court Nos.  CI0201702263
CI0201704820

**DECISION AND JUDGMENT**

Decided:  November 27, 2019

* * * * *

Denise M. Hasbrook and Michael J. Scotti, for appellant.

Thomas P. Dillon and Nicholas T. Stack, for appellee.

* * * * *

**SINGER, J.**

{¶ 1} Appellant, Bradley Delp, appeals the July 26, 2019 judgment of the Lucas County Court of Common Pleas granting summary judgment to appellee, Cleves Delp. As the action is barred by res judicata, we affirm.

**{¶ 2}** In 2011, appellant filed a federal lawsuit against appellee and others which was dismissed as a sanction due to the improper actions of appellant. On April 5, 2017, appellant filed a complaint against appellee claiming the breach of an oral agreement that required appellant to transfer clients from his investment advisement business to appellee and for unjust enrichment. On November 15, 2017, appellant filed a separate state suit also claiming breach of oral contract and unjust enrichment which surrounded payment of death benefits on a life insurance policy for Donald Mossey.

**{¶ 3}** In both actions, appellee filed a motion for summary judgment claiming that he was entitled to judgment under the doctrine of res judicata and the oral agreements were barred by the statute of limitations. The trial court determined separately that both actions were barred by res judicata.

**Facts**

**{¶ 4}** Appellant and appellee are brothers who worked together in an investment advisory business from 1992 through 2010. The brothers were working as independent contractors for LPL Financial Services ("LPL") as investment advisors during this time period. Both brothers "nomineed" their earnings from their investment advisement business to their joint business, The Delp Company. After all of their expenses were paid, the brothers split the profits equally. The Delp Company was in charge of providing administrative services and other support to the brothers and their many ventures. Their company DelHold served as a holding company for several of the businesses the brothers owned and operated together.

2.

{¶ 5} In the summer of 2008, appellant and appellee were informed that LPL would begin an investigation into the brothers' activities as security brokers. A few months later, the Financial Industry Regulation Authority ("FINRA") announced it would begin investigating certain security services the brothers offered to their clients.

{¶ 6} Appellant alleges that because the brothers were concerned about what impact these types of investigations would have on their clients, the brothers created a strategy where the investigations would focus on appellant's actions and he would separate from the brothers' various businesses. During the course of this negotiation, which took place between 2008 and 2010, the brothers formed at least two oral contracts regarding how to distribute two aspects of the brothers' enterprise of companies.

**Oral Agreement Surrounding Investment Clients**

{¶ 7} In the first oral contract, appellee agreed to keep any investment revenue that was generated by appellant's clients segregated for future delivery to appellant, he would create a new independent registered investment advisor ("RIA") to continue the brothers' efforts as investment advisors, and ensure that appellant would maintain an equal interest in the RIA. In return, appellant was to transfer all of his clients to the new RIA and to comply with the pending investigations.

{¶ 8} Appellee created a new RIA named TFO-TDC, LLC ("TFO-TDC"). Appellant transferred all of his clients to the new RIA and cooperated fully with the investigations by FINRA and LPL. The investigations against appellant were completed in 2011 and as a result of those investigations, appellant was temporarily prevented from

3.

advising clients on their investment needs. Appellant contends he transferred his clients to appellee and cooperated with the investigations, but appellee failed to segregate the income gained from those clients and pay that income to appellant.

{¶ 9} In 2010, several documents were signed between the parties. They disagree about whether those documents fully executed the removal of appellant from The Delp Company and DelHold. These documents were called the "accommodation documents" by appellant. Appellant claims these documents did not validly transfer his interest to appellee due to the documents being incorrectly signed and dated.

{¶ 10} Prior to any lawsuits being filed, appellant's attorney sent several letters to appellee's attorney which the parties call the "Grimley letters." In these letters, appellant states that TFO-TDC included appellant's clients in its organization without appellant's consent and seeks to be a part of the organization. In response, appellee's attorney states that appellant has no right to any client files and that because he was currently suspended by FINRA, he cannot claim any income from investment advising services.

{¶ 11} In the final Grimley letter, appellant claims his ownership in The Delp Company and DelHold and claims that the clients were transferred for "administrative convenience." Most importantly, the letter states "As part of the original overall plan agreed during the FINRA investigation, [appellant] was to accept sole responsibility for the FINRA issues (which he did) and afterwards to once again become an owner of the RIA now operating as TFO-TDC, LLC."

4.

## Oral Agreement Surrounding the Mossey Policy

{¶ 12} One of the other companies owned by the brothers was HillAndDale of Michigan, LLC ("HillAndDale"). HillAndDale is wholly owned by DelHold and each brother owned 50 percent of DelHold until the accommodation documents were signed in 2010.

{¶ 13} HillAndDale owned two life insurance policies on Donald Mossey, who was the Chairman of the Hillsdale College Board of Trustees. These policies are referred to by the parties as the "Mossey policies." One of the Mossey policies was worth $1 million and the other was worth $2 million. Both policies contained a return of premium at death rider.

{¶ 14} Appellant states that he "paid substantially all of the premiums" for the insurance policies which totaled more than $1 million since 2002. Prior to Donald Mossey's death, the brothers orally agreed that because appellant had paid a large amount of premiums, the death benefits would not be split equally despite their equal ownership interests in DelHold. Appellant and appellee were to split the $2 million policy's benefits equally, but appellant would receive all of the benefits from the other policy. This agreement took place in 2009. In 2010, appellant states that he sold his interests in DelHold by signing the accommodation documents.

{¶ 15} Appellant argues that these policies were not assets of DelHold or HillAndDale because in 2009, accountants for DelHold prepared a statement of DelHold and HillAndDale's assets, but the statement did not include the Mossey policies. The

5.

statement was created when the parties were attempting to determine what appellant's interests in the companies were worth.

{¶ 16} On July 20, 2010, appellee called appellant to modify their previous agreement about the Mossey policies. This phone call took place after appellant sold his interest in DelHold. The brothers then agreed that the payment of the proceeds from the Mossey policies would be delayed until after the FINRA investigations were completed so that additional attention would not be drawn to the brothers' companies. In return, appellant would cooperate with the FINRA investigations and any further investigations that may occur. On or about August 14, 2010, death benefits of more than $4.2 million were paid from both life insurance policies. Appellee has retained these proceeds.

{¶ 17} On October 17, 2010, appellant and appellee met in St. Louis, Missouri, along with appellant's attorney Christopher Erblich and the president of The Delp Company. This meeting did not deal with the sale of appellant's interests in The Delp Company and DelHold, but rather with other outstanding issues. Appellant contends that one of the items on the agenda at this meeting was the oral agreement about the Mossey policies. Notes from this meeting indicate there was a discussion of the distribution of $4.2 million in proceeds from the Mossey policies. No further agreement as to the proceeds was reached between the parties.

### Federal Lawsuit

{¶ 18} Appellant filed suit in federal court in 2011 in which he sought a declaratory judgment declaring that he had not actually sold his interests in the

6.

companies in the accommodation documents, sought an accounting of the assets of The Delp Company and DelHold, included a claim for "equitable relief" against the defendants, and included a claim for breach of fiduciary duty against appellee and his trust based on appellee's actions as an executive, officer, and director of The Delp Company and DelHold.

{¶ 19} Part of this lawsuit involved Erblich and his related trusts. These defendants were dismissed from the federal case for lack of personal jurisdiction. Erblich would become involved with The Delp Company after appellant's departure.

{¶ 20} Appellant throughout the federal complaint refers to The Delp Company as "business enterprise." He also alleges that the assets of DelHold and The Delp Company are the business relationships, data, and client lists. Appellant stated that there was no income generated from these assets, but rather only from the investment advisement income the brothers received from LPL. None of the oral agreements between appellant and appellee were mentioned in the federal complaint.

{¶ 21} Count 3 of his federal complaint claims that he should be afforded "equitable relief." This count essentially states that the defendants were unjustly enriched by the actions of appellee as they relate to appellee's retention of the companies and their income. Appellant pleads that the defendants were "unjustly conferred a benefit," the defendants knew they received the benefit, and the continued use of the benefit was "unfair and unjust." This count relates to the fact that the parties knew that

7.

the deal to break up the company was not complete, but kept all of the assets and income for themselves to the exclusion of appellant.

{¶ 22} In an effort to streamline the lawsuit, the district court judge ordered discovery between the parties as it related to the enforceability of the underlying sales contracts. In response, appellant produced several private emails between appellee and his attorney and other third parties. Appellant was not included on these emails and the emails came from appellee's personal email account. As appellant seemingly had no legal or valid access to these emails, he was then ordered to answer how he came into possession of these emails in a deposition by the court. During this deposition, appellant asserted his Fifth Amendment right against self-incrimination and refused to answer any questions surrounding how he came into possession of the private emails. Appellant eventually offered an affidavit to explain those circumstances.

{¶ 23} Following the submission of the affidavit, the district court held a three-day evidentiary hearing to determine how appellant came into possession of the emails and to determine any prejudice the defendants may have suffered from his actions. At the hearing, appellant testified that he obtained the emails by finding them laying around the shared office and by accessing appellee's computer without appellee's consent. Appellant represented that the email account was not password protected, despite FINRA regulations and audits which demonstrated otherwise. The district court found appellant's stories of how he obtained the emails were not credible or truthful and that appellant had engaged in theft in his attempts to gather the information. As a sanction for

8.

appellant's misdeeds, the district court judge dismissed his entire complaint. That sanction was affirmed by the Sixth Circuit Court of Appeals on December 16, 2017. The state court suits were initiated soon thereafter.

## Assignment of Error

{¶ 24} Appellant brings forth one assignment of error for our review:

The lower court erred in dismissing Plaintiff's complaint on the basis of res judicata.

## Law and Analysis

{¶ 25} "A valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 653 N.E.2d 226 (1995), syllabus. "'It has long been the law of Ohio that "an existing final judgment or decree between the parties to litigation is conclusive as to all claims which were *or might have been* litigated in a first lawsuit."'" *Id.* at 382, quoting *Natl. Amusements, Inc. v. Springdale*, 53 Ohio St.3d 60, 62, 558 N.E.2d 1178 (1990). "The doctrine of *res judicata* requires a plaintiff to present every ground for relief in the first action, or be forever barred from asserting it." *Natl. Amusements* at 62, citing *Rogers v. Whitehall*, 25 Ohio St.3d 67, 494 N.E.2d 1387 (1986).

{¶ 26} Res judicata applies even if a plaintiff is prepared to present evidence, grounds, or theories of the case that were not presented in the previous case or to seek remedies in different forms of relief not demanded in the first action. *Id.* at 383, quoting

9.

1 Restatement of Law 2d, Judgments, Section 25, 209 (1982). In the res judicata context, a transaction can be defined as a "common nucleus of operative facts." *Id.*, quoting 1 Restatement of Law 2d, Judgments, Section 24, Comment b.

{¶ 27} For a suit to be excluded under the doctrine of res judicata, four requirements must be met: "'(1) a prior, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action.'" *Portage Cty. Bd. of Commrs. v. Akron*, 109 Ohio St.3d 106, 2006-Ohio-954, 846 N.E.2d 478, ¶ 84, quoting *Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir.1997).

### A. Oral Agreement Surrounding Investment Clients

*Adjudication on the Merits*

{¶ 28} "A dismissal with prejudice is treated as an adjudication on the merits." *Lewis v. Moore*, 2017-Ohio-4049, 91 N.E.3d 334, ¶ 16 (10th Dist.), citing *Tower City Properties v. Cuyahoga Cty. Bd. of Revision*, 49 Ohio St.3d 67, 69, 551 N.E.2d 122 (1990). The doctrine applies between federal court and state court judgments. *Rogers* at 69.

{¶ 29} Appellant's federal claims were dismissed with prejudice in federal district court. This serves as an adjudication on the merits, satisfying the first prong of this court's res judicata analysis.

10.

*Same Parties*

**{¶ 30}** The federal suit included appellant and his personal trust as plaintiffs. The federal suit also included appellee, his two personal trusts, and TFO-TDC, LLC. The first state suit was merely appellant versus appellee. Therefore, the parties are the same between the two actions and the second prong of the analysis is satisfied.

*Claims that Were or Could Have Been Litigated*

**{¶ 31}** With regards to allegations relating to the oral agreement surrounding the transfer of clients, appellant argues that "Even though the claims in the State Case arguably could have been brought in the Federal Lawsuit, they should not have been asserted there." He argues that it would have been inappropriate to bring the state court arguments in with the federal matter because the two cases involve different transactions, occurrences, and relief.

**{¶ 32}** Appellee argues that appellant concedes that the claim could have been brought before the federal court, that appellant's claim for unjust enrichment was brought before the federal court, and that the oral contract claim should have been brought before the federal district court.

**{¶ 33}** Here, appellant alleges that the oral contract took place in the spring of 2009, shortly after the investigations were started into the brothers' investment activities. This is the same time period when appellant alleged that appellant, appellee, and appellant's ex-attorney Erblich began discussing the sale of appellant's interests in the family's companies. The federal complaint also speaks to the multitudes of negotiations

11.

between appellant and appellee during the course of the breakup of the family companies. The federal complaint does not speak to the oral agreement that is the basis of the first state suit.

{¶ 34} Further, it would appear that appellant was aware there was a claim for the breach of an oral agreement in 2011 when his attorney referenced that the clients were transferred to appellee and TFO-TDC for "administrative convenience." It also appears that appellant has conceded this argument when he states that his state court claims "could have" in fact been brought before the federal court. He goes on to argue that the claims are so different in their substance and their timing that it *should* not have been brought before the federal court.

{¶ 35} We are unpersuaded by appellant's argument. He clearly states that he was capable of including his claims regarding this oral agreement in the federal court suit. It is not important whether they *should* have been brought, but whether they *could* have been brought. Ohio has adopted an expansive view of res judicata and requires a litigant to bring forward every ground for relief or risk being barred from ever presenting those claims. *Holzemer v. Urbanski*, 86 Ohio St.3d 129, 133, 712 N.E.2d 713 (1999). Appellant is not entitled to a second bite at the apple under a different legal theory.

{¶ 36} Appellant's current claims should have been brought before the federal court. Appellant was seeking return to the family companies or the income gained therefrom. This current claim for an oral agreement would have and should have been an alternative claim to the damages that appellant sought before the federal court.

12.

{¶ 37} The claims were overlapping in time, had the same parties, and many of the same facts. Despite appellant's attempts to argue otherwise, his state court claims are clearly just alternative claims that he should have brought forward when he originally sued appellee. As such, this prong of the res judicata analysis is also met.

*Same Transaction or Occurrence*

{¶ 38} The first state suit and the federal suit arise from the same common nucleus of operative facts because they came from a series of interconnected transactions and occurrences. Appellant argues that the oral agreement and the accommodation documents were two separate contracts, which occurred at separate times, and sought different outcomes. Appellant argues that the declaratory judgment in the federal lawsuit was about the ownership in a certain number of the brothers' related companies. He states that, in contrast, the state suit relates to whether appellant agreed to transfer his clients to appellee and appellee promised to pay investment advisory income to appellant.

{¶ 39} Appellant's attempt to place the alleged oral agreement out of this time period and claim that it was completely unrelated to his earlier claims of unfair practices by appellee is an untenable argument. This oral agreement clearly took place in the process of the separation of the brothers in the company. Appellant attempts to argue that these contracts were completely separate actions, but we do not agree. Following appellant's argument to its logical end, appellant and appellee took a small break in their negotiations to talk about how appellant was going to transfer his clients to appellee, but

13.

that fact had nothing to do with the breakup of the family companies and who owned those companies. The court does not find this to be true.

{¶ 40} Although the federal lawsuit focused on the ownership of The Delp Company and its related entities, part of that lawsuit was the income generated by the investment advisory business. This income was part of The Delp Company's assets. Appellant stated that this income was the true value of The Delp Company while he testified at the hearing on the motion for sanctions. Thus, an issue in both suits was the income generated by the investment advisement business. The focus on recovering that income in that matter was the ownership of the companies, rather than appellant's argument now which involves an oral agreement between the brothers.

{¶ 41} This oral agreement was encompassed in the brothers' overriding discussions regarding appellant's removal from the company that culminated with the accommodation documents that were signed in 2010. Appellant is attempting to parse facts to meet his ends. However, appellant admitted in the federal matter that although The Delp Company did not directly deal with an investment advisory business and that part of its assets was the income gained by the brothers through their advisement business. Ownership of The Delp Company was an integral part of the federal lawsuit, including the income generated through The Delp Company. Appellant now seeks the same income as damages.

{¶ 42} Further, the court cannot find that these agreements took place at completely different times. The discussion regarding the sale of the family companies

14.

began in 2008 and into early 2009. In his federal complaint, appellant stated that appellee's wrongful actions took place in 2008 and early 2009. This is the exact time period that this alleged oral agreement took place.

{¶ 43} The same witnesses and evidence would be necessary to prove both claims. In this case, appellant would have to prove an agreement took place between the brothers regarding the transfer of clients to appellee and the new RIA. Appellant and appellee would have been witnesses for the federal lawsuit as to the execution of the accommodation documents and part of that process would have been the transfer of clients to appellee.

{¶ 44} Appellant is also seeking some of the same damages that he previously sought in federal court. In the federal case, appellant sought control and income of the family's various business entities. Part of this income was the income generated by the brothers' activities with their investment advising services and LPL. In this state suit, appellant seeks the income earned from LPL and other investment advisement activities that is allegedly being unlawfully withheld by appellee. In the federal case, appellant sought to have those items returned to him on the theory that the accommodation documents were not valid or enforceable. In the state suit, he seeks the return of the income by stating that an oral contract provided appellant the right to that income. It appears that appellant is seeking the same damages as from the federal suit disguised as a different legal theory.

15.

**{¶ 45}** Appellant points to several cases in support of his argument that the oral contract did not arise out of the same transaction or occurrence. First, he cites to a Second District decision which involved a patient of a hospital receiving medical care over the course of 14 visits which stemmed from a single accident. *Miami Valley Hosp. v. Purvis*, 2d Dist. Montgomery No. 21740, 2007-Ohio-4721, ¶ 2-6. In the first lawsuit the hospital sought to have the patient pay unpaid medical bills under a breach of contract theory for two visits. *Id.* at ¶ 3. A judgment was entered against the patient. *Id.* The second lawsuit sought payment for the rest of the patient's visits to the hospital. *Id.* at ¶ 4. The second lawsuit was dismissed by the trial court under the doctrine of res judicata because all of the medical care and treatment of the patient arose from a single occurrence, the accident which caused the patient's injuries. *Id.* at ¶ 6. The Second District disagreed and found that a different set of proof and facts were required to prove the patient owed the rest of the unpaid medical bills and therefore the two suits did not share a common nucleus of operative facts. *Id.* at ¶ 17.

**{¶ 46}** Appellant argues that *Purvis* is similar to the case at hand because although the hospital could have joined in its suit all of the outstanding medical bills at the time of the first lawsuit, it was not barred under res judicata from asserting those claims in a second lawsuit due to the evidentiary differences in proving their allegations. Appellant likens this to the fact that the standard of proof for an oral contract between the brothers and proving whether the sale documents were valid are different and therefore not subject

16.

to res judicata. Appellee argues that because the same witness list and the same subpoenas were utilized by appellant in both the federal lawsuit and the current lawsuit, the proof and facts are the same.

{¶ 47} The court finds that the matter at hand differs from *Purvis* because the agreement took place in and around the same time period as the accommodation documents were negotiated and executed, the oral agreement does not involve differing rights and obligations than appellant alleged in the federal suit, and the agreement came from a interconnected series of transactions that led to a common nucleus of operative facts.

{¶ 48} The second case appellant cites to in support of his argument is *Chattree v. Chattree*, 8th Dist. Cuyahoga No. 95051, 2011-Ohio-1925. In that matter, a father sued his daughter for her failure to maintain her obligations under a promissory note to fund a renovation of an apartment. The father had previously sued his daughter for breach of fiduciary duty, fraud, and breach of contract in relation to a mortgage for an apartment the father helped the daughter buy. The Eighth District agreed with the trial court and found that res judicata between the two matters did not apply because the promissory note was signed four months after the mortgage was executed. *Id*. at ¶ 25. Both the promissory note and the mortgage related to the same cooperative apartment. *Id*. Because the promissory note was executed in order to pay for renovations to the apartment and the mortgage was executed to purchase the apartment, the facts were distinct and separate enough for res judicata not to be a bar to the father's claim. *Id*.

17.

{¶ 49} In the case at hand, appellant argues that the oral agreement and the later signed "accommodation documents" were at completely separate times and therefore are distinct and require different proof. We find, however, that *Chattree* is distinguishable because although the promissory note and the mortgage related to the same property, they were clearly executed at different times and for separate reasons.

{¶ 50} Here, the parties began discussing appellant's leave from the family companies and how they would execute that decision as early as 2008. Although the issues surround the family's companies and appellant's fair compensation for leaving the company, the issues presented in appellant's first state suit are not factually different and do not require different proof from the federal suit. The two agreements were executed for the same reasons unlike the note and mortgage in *Chattree*, which were executed for renovations and the purchase of an apartment. The agreement and the accommodation documents were executed to protect the brothers' companies from FINRA investigations and any fallout that may come from an adverse finding.

{¶ 51} Appellant also points to a Ninth District case which dealt with two entities that had mortgages on the same property. *Fifth Third Bank v. Hopkins*, 177 Ohio App.3d 114, 2008-Ohio-2959, 894 N.E.2d 65 (9th Dist.). The court found that a second action by a secondary lien holder was not barred by res judicata despite a previous action by the primary lien holder. The court found that an action to foreclose a mortgage was separate and distinct from an action for judgment on the note. *Id*. The actions were based on separate and distinct contractual obligations. *Id*. A similar finding was made by this

18.

court in *Multibank 2009-1CML-ADC Venture, LLC v. South Bass Island Resort, Ltd.*, 2018-Ohio-128, 102 N.E.3d 1282, ¶ 13 (6th Dist.).

{¶ 52} These decisions stem from the fact that the actions are separate and distinct contractual remedies. An oral contract for similar remedies that were previously brought forth in federal court does not equate to the differences between a mortgage foreclosure and judgment on a note. The enforcement of an oral contract is not a separate contractual obligation from the enforcement of a written contract that arose during the same time period and for the same purpose.

{¶ 53} Appellant finally points to *Ardary v. Stepien*, 8th Dist. Cuyahoga No. 82950, 2004-Ohio-630. In that matter homeowners filed a second lawsuit based on the other party's misrepresentation of the condition of a septic tank and system in the home they sold to the new homeowners. *Id*. at ¶ 2. A previous lawsuit alleged that the same defendants failed to inform the homeowners where the septic system was located on the property. *Id*. at ¶ 6-7. The Eighth District found that the second lawsuit was not barred by res judicata because the cause of action had not accrued until after the completion of the first lawsuit. *Id*. at ¶ 24-25. After the first lawsuit was settled, the homeowners determined that the previous owners misrepresented the condition of the septic system at the time of purchase. *Id*. The Eighth District found that the two causes of action arose from separate transactions. *Id*. at ¶ 28.

{¶ 54} In that matter, and unlike the matter before this court, the transactions occurred at distinct time periods. Further, the second cause of action did not accrue until

19.

the first cause of action had been completed. The homeowners were not aware the condition of the septic tank had been misrepresented until after they had found the septic tank which was the cause of action in the first lawsuit. Here, appellant's claim for an oral contract accrued before the federal lawsuit and was available to be included in that expansive suit.

## B. Oral Agreement Surrounding the Mossey Policy

{¶ 55} Once again, this oral agreement involved the same parties and followed an adjudication on the merits in the federal case. The first two prongs of the res judicata analysis are met.

### *Claims that Were or Could Have Been Litigated*

{¶ 56} Appellant argues that the trial court erred in determining that his claim should have been brought because it "was not necessary, desirable, or important that he do so." Appellant argues that the federal lawsuit was regarding the sale of appellant's interest in The Delp Company and DelHold, but that the proceeds from the Mossey policies were not assets of either company.

{¶ 57} Appellant also attempts to argue that the contracts were made at completely separate times. He states that he "should not have brought his State Case Claims in the Federal Litigation because it would have been fact-intensive detour from the discrete issues at the core of the Federal Litigation." Appellant also argues that he is not seeking the 50 percent share of the Mossey policies as he would have been entitled to if he were

still an owner of DelHold, but rather 100 percent of the proceeds as he argues he is entitled to now.

{¶ 58} This court cannot agree. The oral agreement dealt with DelHold's assets and an accounting of those assets. An accounting would have uncovered the payment of the proceeds to appellee for the Mossey policies and included the transfer of those sums to appellant. As such, this oral agreement should have been included in the federal suit as a way of determining the distribution of assets appellant was attempting to recover. The third prong is also met.

*Same Transaction or Occurrence*

{¶ 59} Appellant argues that the oral agreement surrounding the Mossey policies was a separate transaction or occurrence and although there are some distinctions, appellant was not required to bring his claims in federal court. Appellant argues that his claims are not barred by res judicata because he now brings a separate legal claim for recovery, the source of the assets are distinct, and the time of the negotiations was at a different time.

{¶ 60} The federal lawsuit was appellant's effort to account for all of the assets of DelHold and determine which portions appellant was entitled to. The distribution of the Mossey policies should have been brought forward at that time. The purpose of the federal lawsuit was to determine appellee's obligations to appellant. Appellant attempts to argue that an accounting was only appropriate at the federal level, but not the actual return of the proceeds from that accounting. By appellant's own admission, appellee was

21.

keeping the proceeds within the holding company in order to shelter them from any ongoing investigations. This was the same reason the brothers made this oral agreement and the previous agreement regarding the transfer of clients to the new RIA.

{¶ 61} We do not see this oral agreement as a discrete transaction when it was part of an ongoing series of agreements by the brothers to shelter assets from FINRA investigations and any fallout therefrom. Appellant would once again ask this court to find this oral agreement as a discrete and distinct agreement that had little to do with any other agreement that the brothers made, despite the agreement involving the same companies and parties that was made for the same purpose and in the same time period. Once again, the court must find that this oral agreement stemmed from the same common nucleus of operative facts as the transaction that was at issue in the federal suit. The oral agreement was initiated because the brothers were fearful of the consequences of a FINRA investigation. The agreement was made in a contemporaneous time period as the brothers began discussing how to remove appellant from the brothers' enterprise of companies. Finally, the oral agreement should have been brought forward in the federal suit as the sought after accounting would have led to the proceeds being found and distributed according to the oral agreement at issue in this matter.

22.

**Conclusion**

**{¶ 62}** Therefore, both oral agreements were barred by res judicata because they arose from the same transaction or occurrence.  Appellant's assignment of error is found not well-taken.  Judgment of the Lucas County Court of Common Pleas is affirmed.  Pursuant to App.R. 24, appellant is ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J. _____

Thomas J. Osowik, J. _____

Christine E. Mayle, P.J. _____
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.