[Cite as *State v. Oliver*, 2021-Ohio-606.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28774 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-2905 |
| | : | |
| DARRION OLIVER | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 5th day of March, 2021.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by HEATHER N. KETTER, Atty. Reg. No. 0084470, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

JEFFREY R. MCQUISTON, Atty. Reg. No. 0027605, 130 West Second Street, Suite 1818, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Darrion Oliver appeals from the trial court's judgment convicting him of two counts of rape, with violent offender specifications. Oliver was sentenced to two mandatory prison terms of ten years each on the rapes, to be served concurrently, to three additional years on the repeat violent offender specifications, to be served consecutively to the other sentences, and he was designated a Tier III sex offender.

{¶ 2} On August 2, 2018, Oliver was indicted on two counts of rape (by force or threat or force) and one count of kidnapping (sexual activity), all with repeat violent offender specifications (the "A" Indictment). Oliver pled not guilty. On August 31, 2018, a "B" Indictment was issued with 14 additional counts and additional specifications.

{¶ 3} On October 10, 2018, Oliver filed a motion to suppress, which the court subsequently overruled. On December 24, 2018, he filed a motion for relief from prejudicial joinder, which requested that the court try the "A" and "B" indictments separately. The court granted this motion and set the "A" indictment for trial.

{¶ 4} Oliver was tried in March 2019. The record reflects that all prospective jurors were sworn in prior to the start of voir dire. After the prosecutor introduced Detective Zachary Williams of the Dayton Police Department as the State's representative, one prospective juror, "Mr. K.", indicated that he knew Det. Williams "in passing" because the juror was retired from the Dayton police department.

{¶ 5} At the start of voir dire by the parties, the trial court indicated that only the jurors "seated in the jury box and in the chairs inside the rail" should answer their questions, and that those prospective jurors "seated in back of the rail [and] in the spectator section" should not respond at that time. However, the court advised those jurors who were not to respond immediately to "pay attention and listen carefully" so that

if they were called upon, they would be in a position to respond without the parties and the court having "to repeat all that ha[d] proceeded."

{¶ 6} After voir dire concluded, the court recessed for jury selection. The court advised the parties that, with respect to challenges for cause, all of the prospective jurors would be "under consideration," and that each side had four peremptory challenges. The court further explained that there would be one alternate juror, for a total of 13 jurors to be selected, and each side would have one peremptory challenge with respect to the alternate juror.

{¶ 7} The record reflects that five prospective jurors (Juror Nos. 1, 3, 6, 14, and 20) were removed for cause. Thereafter, in alternating turns beginning with the State, the parties exercised three peremptory challenges each. The following exchange then occurred:

THE COURT: * * * State of Ohio has one more peremptory challenge with respect to the 12 actual jurors. Do you wish to exercise it?

* * *

[THE PROSECUTOR]: Should the State pass and the Defendant exercise their final one, putting the current alternate * * * into the 12, would we still be able to voir dire that person at this point? So we would be able to re-voir dire anybody that's not in the first 23 regardless?

THE COURT: Yeah.

[THE PROSECUTOR]: We'll pass our last.

THE COURT: Defense has one remaining peremptory challenge; do you wish to exercise it?

[DEFENSE COUNSEL]: If we exercise it, Your Honor, can I still ask questions even if I don't have any challenges left?

THE COURT: Can you - - yeah. Anybody that's on there that we haven't voir dired is subject to being voir dired.

[DEFENSE COUNSEL]: * * * I just wanted to double check. I would move to strike - -

THE COURT: Now, wait. I didn't - - I guess I'm going to qualify that. They can only then be challenged for cause. You've got no more peremptories.

* * *

[DEFENSE COUNSEL]: It would only be a cause challenge. I think everybody understands that, right?

[THE PROSECUTOR]: But we would have a peremptory on the alternates, still?

THE COURT: Yeah, you still have your alternate.

* * *

THE COURT: But it's related to - - we're probably going to - - we may have another person, such as [Mr. K.] * * * who would jump into that alternate spot.

[DEFENSE COUNSEL]: * * * Understood. We would strike - - Mr. [P.] [who] is now sitting at Number 7, I believe.

{¶ 8} After defense counsel exercised his fourth and final peremptory challenge to the panel of 12, Ms. W. took position number 7. Ms. W. was thereafter excused for cause

under Crim.R. 24(B)(13) by agreement of both parties. The court explained that Mr. K. then became Juror Number 7, but subject to voir dire, and that the alternate spot remained to be filled. The following exchange occurred with Mr. K:

[THE PROSECUTOR]: * * * [Mr. K.], based on your responses in your questionnaire you gave me, which I have in front of me, I take it you're now a retired Dayton police officer?

MR. [K.]: That's correct.

[THE PROSECUTOR]: * * * And you put some responses in here. Do you mind if I ask you about those out loud, or would you like to talk to him up at the bench?

MR. [K.]: It makes no difference.

* * *

[THE PROSECUTOR]: * * * And this response may be old, because I think you've been summoned before, but you said you would not make a good juror because of your law enforcement experience?

MR. [K.]: Well, partially.

[THE PROSECUTOR]: * * * Do I take that to mean that you could not be fair and impartial to - -

MR. [K.]: No.

[THE PROSECUTOR]: - - sit here with the jury?

MR. [K]: That's not what I meant.

[THE PROSECUTOR]: * * * What did you mean?

MR. [K.]: I apparently misunderstood the question.

\* \* \*

MR. [K]:   I just thought it was asking if I had any prior experience.

\* \* \*

MR. [K.]:   I've been on a jury before.

[THE PROSECUTOR]:   \* \* \*   And things get lost in translation; that's just why I'm asking, and this is kind of a unique perspective because we have a little smaller pool to talk to now.   Given your experience as a police officer, you believe you could be fair and impartial to sit as a juror in this case?

MR. [K.]:   Sure.

[THE PROSECUTOR]: \* \* \* And nothing that we've - - any questions I was asking anybody earlier that you have responses for that you want to talk about, such as sexual assault experience, or anything of that kind?

MR. [K.]:   No.

\* \* \*

THE COURT:   Any challenge of Mr. [K.] for cause?

[THE PROSECUTOR]: The State doesn't have any.

[DEFENSE COUNSEL]:   I don't think I have grounds to do it.   He says he's going to be fair and impartial.

{¶ 9} At the conclusion of the trial, the court instructed the jurors that their first function in the jury room would be to select a foreperson.   The court further advised the jury as follows:

\* \* \* The person you select to preside over your deliberations does

not have any greater power, nor does that person's vote have any more importance than others.

He or she serves the purpose of helping to conduct your deliberations in an orderly manner and to give each of you the opportunity to express your opinion. * * *

* * *

Consult with one another in the jury room with a view to reaching an agreement, if you can do so without disturbing your individual judgment. Each of you must decide this case for yourself. You should do so, however, only after a discussion of the case with the other jurors. Do not hesitate to change an opinion if convinced that it is wrong. However, you should not surrender your considered opinion concerning the weight of the evidence in order to be congenial or to reach a verdict solely because of the opinions or opinion of other jurors.

{¶ 10} When the jury reached its verdicts, the court read the verdicts for each count aloud, confirming with the foreperson that each one was read correctly. The court indicated that it would announce its decision on the repeat violent offender specifications at the upcoming scheduling conference on April 1, 2019. On that day, the court indicated that it found Oliver guilty of the repeat violent offender specifications with respect to each count.

{¶ 11} In his brief,[1] Oliver asserts two assignments of error. His first assignment

---

[1] We note that much of the text in Oliver's 15-page brief is single-spaced. App.R. 19 requires double line spacing for briefs.

of error is as follows:

> THE TRIAL COURT COMMITTED PLAIN ERROR IN THE MANNER THAT IT CONDUCTED JURY SELECTION IN THAT JURORS WERE SEATED IN THE PANEL WHO WERE NOT SUBJECT TO VOIR DIRE PRIOR TO THE PARTIES BEING REQUIRED TO EXERCISE PEREMPTORY CHALLENGES.

{¶ 12} According to Oliver, due to the manner in which the jury selection process was conducted, defense counsel was able to voir dire Mr. K. only when he became one of the 12 members of the jury, and he "was not voir dired in such a way as counsel was permitted to exercise a peremptory challenge on him."   Oliver asserts that, because of Mr. K.'s background as a police officer and "his statement that he would not make a good juror because of his law enforcement experience," he "would have been a most obvious target for the exercise of a peremptory challenge."   Oliver also asserts that, because Mr. K. "was not subjected to voir dire" until after the defense's peremptory challenges had been exhausted, Mr. K. "was left on the jury without benefit of voir dire."   He further contends that the "unfairness of the process was exacerbated by the fact that [Mr. K.] ultimately became the foreperson for the jury."[2]   Oliver contends that the jury selection process "was not done properly and resulted in significant prejudice" to him.   Further, he contends that the error was plain error pursuant to Crim.R. 52(B).

---

[2] In his brief, Oliver's attorney indicated that he intended to put the fact that Mr. K. became the jury foreperson into the record "pursuant to App.R. 9(E) when given the opportunity to supplement the record." Defense counsel moved to supplement the record with an affidavit from Oliver, which stated that, when the verdict was announced, he became aware that Mr. K. was the foreperson of the jury.   We overruled the motion, since Oliver's affidavit was not before the trial court for consideration during the underlying proceedings. *See* Decision and Entry, October 21, 2020.

{¶ 13} Oliver further asserts that "reasonable examination would include the opportunity to voir dire a prospective juror prior to the court requiring the parties to exercise their peremptory challenges," because failure to do so could result in the placement of a juror on the jury without the benefit of voir dire prior to the exercise of peremptory challenges. In other words, Oliver argues that "100% of the prospective jurors should have been voir dired by counsel" before the court requiring counsel to exercise peremptory challenges.

{¶ 14} We note that Oliver failed to object to the selection process in the trial court. As we have noted:

> It is well-settled that failure to object waives all but plain error. *State v. Bahns*, 185 Ohio App.3d 805, 2009-Ohio-5525, 925 N.E.2d 1025, ¶ 25 (2d Dist.), citing *McBride v. Quebe,* 2d Dist. Montgomery No. 21310, 2006-Ohio-5128. "Plain error exists 'if the trial outcome would clearly have been different, absent the alleged error in the trial court proceedings.' " *Id.*, citing *State v. Rollins*, 2d Dist. Clark No. 2005-CA-10, 2006-Ohio-5399.

*State v. Kessel*, 2019-Ohio-1381, 133 N.E.3d 1086, ¶ 33 (2d Dist.).

{¶ 15} We conclude that Oliver has not demonstrated plain error or error of any sort. The use of peremptory challenges began after five challenges for cause were utilized; at that point, there were 12 jurors in the box, and 5 jurors from inside the front rail were seated within the 12. These five had been subject to voir dire originally. As the State points out, jury selection for a criminal trial is generally governed by Crim.R. 24 and R.C. 2945.21 et seq. Crim.R. 24(B) provides:

> Any person called as a prospective juror for the trial of any cause

shall be examined under oath or upon affirmation as to the prospective juror's qualifications. The court may permit the attorney for the defendant, or the defendant if appearing *pro se,* and the attorney for the state to conduct the examination of the prospective jurors or may itself conduct the examination. In the latter event, the court shall permit the state and defense to supplement the examination by further inquiry. Nothing in this rule shall limit the court's discretion, with timely notice to the parties at anytime prior to trial, to allow the examination of all prospective jurors in the array or, in the alternative, to permit individual examination o[f] each prospective juror seated on a panel, prior to any challenges for cause or peremptory challenges.

{¶ 16} Crim.R. 24(C) governs the challenge of jurors for cause. *See also* R.C. 2313.17 (Examination of jurors; causes for challenge); R.C. 2945.25 (Causes of challenging of jurors).

{¶ 17} Crim.R. 24(D) governs peremptory challenges; it states: "In addition to challenges provided in division (C) of this rule, if there is one defendant, each party peremptorily may challenge * * * four prospective jurors in felony cases other than capital cases * * *." "Peremptory challenges shall be exercised alternately, with the first challenge exercised by the state. The failure of a party to exercise a peremptory challenge constitutes a waiver of that challenge, but does not constitute a waiver of any subsequent challenge." Crim.R. 24(E). "Except by agreement, neither the state nor the defendant shall be required to exercise any peremptory challenge until twelve jurors have been passed for cause and are in the panel." R.C. 2945.23.

{¶ 18} Finally, Crim.R. 24 (G)(1) provides in part that each "party is entitled to one peremptory challenge in addition to those otherwise allowed if one or two alternate jurors are to be impaneled * * *."

{¶ 19} The record reflects that, while counsel for the parties initially addressed their questions to the prospective jurors seated in the jury box and in front of the rail (the first 23 jurors), all of the potential jurors, including Mr. K., were in the courtroom and heard the initial voir dire. While the court advised the prospective jurors beyond the initial 23 not to respond to questions, the court instructed them to "pay attention and listen carefully so that if you are called upon, you will be in a position to respond without our having to repeat all that has proceeded."

{¶ 20} Five jurors were excused for cause prior to the use of any peremptory challenges. Then the State, in alternating turns with Oliver, exercised three peremptory challenges and passed on using the fourth peremptory challenge. Before Oliver exercised his fourth and final peremptory challenge, the trial court advised the parties that any juror "that's on there that we haven't voir dired is subject to being voir dired." The court further clarified that, in the event Oliver exhausted his peremptory challenges, additional jurors could only be challenged for cause, because he would have no more peremptory challenges. Oliver's attorney indicated his understanding of this fact. Oliver then exercised his final peremptory challenge on Mr. P. After all peremptory challenges were completed, Ms. W. became Juror Number 7 but was then excused for cause, which resulted in Mr. K. becoming Juror Number 7 and subject to voir dire. After the additional voir dire of Mr. K., counsel for Oliver indicated that he had no grounds to challenge Mr. K. for cause, because Mr. K. had said he could be fair and impartial.

{¶ 21} Oliver was not denied the opportunity to exercise a peremptory challenge as to Mr. K. When Mr. K. became a seated juror, Oliver had exhausted his peremptory challenges. "Decisions on the exercise of peremptory challenges are a part of trial strategy." *State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80, ¶ 264, citing *State v. Trimble,* 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, ¶ 99. Oliver was aware of Mr. K.'s employment history prior to the commencement of voir dire by the parties, since Mr. K. advised the court about his employment history before voir dire commenced. Oliver asserts, "any competent defense counsel would have immediately utilized a peremptory challenge on [Mr.K.] had they been given the opportunity to do so." However, Oliver could have requested the opportunity to voir dire more jurors for cause, including Mr. K., before exercising his final preemptory challenge.

{¶ 22} Finally, regardless of whether or not Mr. K. was selected as the foreperson, the trial court advised the jury that the foreperson "does not have any greater power, nor does that person's vote have any more importance than others." The court advised the jurors that they each must decide the case for themselves, and that "the foreperson will see that your discussions are orderly and that each juror has the opportunity to discuss the case and cast his or her vote. Otherwise, the authority of the foreperson is the same as any other juror." " 'A trial jury is presumed to follow the instructions given to it by the judge.' " *State v. Ferguson,* 2d Dist. Clark No. 2010-CA-1, 2011-Ohio-6801, ¶ 42, quoting *State v. Henderson*, 39 Ohio St.3d 24, 33, 528 N.E.2d 1237 (1988). Since there is no suggestion to the contrary, we presume the jury followed the court's instructions. For the foregoing reasons, neither error nor plain error is demonstrated, and Oliver's first assignment of error is overruled.

{¶ 23} In his second assignment of error, Oliver asserts:

THE TRIAL COURT ERRED IN SENTENCING DEFENDANT ON THE REPEAT VIOLENT OFFENDER (RVO) SPECIFICATIONS WITHOUT ANNOUNCING A DECISION WITH RESPECT TO THOSE SPECIFICATIONS AND WITHOUT ENTERING A VERDICT ON THOSE SPECIFICATIONS.

{¶ 24} Oliver asserts that the record in this case does not include any finding by the trial court that he was guilty of the repeat violent offender specifications, and thus that sentencing him on those specifications constituted error.

{¶ 25} The trial court's judgment entry of conviction stated in pertinent part:

The Defendant was * * * brought before the court on March 30, 2020 for execution of the sentence, * * * HAVING BEEN FOUND GUILTY BY A JURY TO the following offense(s) in the **A Indictment in CT 1: RAPE (By Force or Threat of Force)(F1), 2907.02(A)(2), with two (2) years Repeat Violent Offender Specification, R.C. 2929.14(D)(2)(a)/2941.149, CT 2: RAPE (By Force or Threat of Force)(F1), with one (1) year Repeat Violent Offender Specification, R.C. 2929.14(D)(2)(a)/2941.149, and CT 3: KIDNAPPING (Sexual Activity)(F1), 2905.01(A)(4), Repeat Violent Offender Specification, R.C. 2929.14(D)(2)(a)/2941.149.**

(Emphasis sic.) This language incorrectly suggests that the jury, rather than the trial court, made the findings of guilt with respect to the RVO specifications.

{¶ 26} On September 18, 2020, after Oliver's brief was filed, the State filed a motion to supplement the record with a transcript of the scheduling conference that

occurred on April 1, 2019, at which time the court announced its decision on the repeat violent offender specifications to Oliver's offenses.   This Court sustained the motion.

**{¶ 27}** The State correctly points out that, in the course of the trial, outside of the presence of the jury, Detective Williams testified that Oliver had previously been convicted of three felony offenses in Montgomery C.P. No. 2005-CR-3889: one count of endangering children, a felony of the second degree; one count of endangering children, a felony of the third degree; and one count of involuntary manslaughter, a felony of the first degree.   The State correctly asserts that both the first- and second-degree felony offenses constituted offenses of violence pursuant to R.C. 2901.01(A)(9).

**{¶ 28}** Further, while "a verdict for a jury trial must be in writing, there is no similar requirement for a bench trial in a criminal case."   R.C. 2945.171 states that, "[i]n all criminal cases the verdict of the jury shall be in writing and signed by each of the jurors concurring therein."   However, a case tried to the bench only requires the court "to make a general finding."   Crim.R. 23(C).   The State asserts that, since "the trial court did in fact find Oliver guilty of the RVO specification on the record, the trial court did not err in sentencing Oliver on each of the two RVO specifications," and that the trial court could issue a nunc pro tunc entry to reflect its finding of guilt on the RVO specifications.

**{¶ 29}** In his reply brief, Oliver asserts that he was not, in fact, convicted of the RVO specifications, because the trial court failed to comply with Crim.R. 32(C).   Crim.R. 32(C) states:   "A judgment of conviction shall set forth the fact of conviction and the sentence. * * * The judge shall sign the judgment and the clerk shall enter it on the journal. A judgment is effective only when entered on the journal by the clerk."   Oliver argues that the trial court did not sign the judgment with respect to the RVO specifications and the

clerk did not enter it on the journal, so the judgment was not effective. In response to the State's argument that the error could be corrected through a nunc pro tunc entry, Oliver points out that the trial court has issued no such entry in this case. Finally, Oliver repeats his assertion that he was not properly sentenced on the repeat violent offender specifications because he was not properly convicted of those specifications.

{¶ 30} Contrary to Oliver's assertions, the record reflects that his judgment entry of conviction was electronically signed by the court and journalized. R.C. 2941.149 provides: "The court shall determine the issue of whether an offender is a repeat violent offender." As set forth above, the judgment entry of conviction suggested that the jury found him guilty not only of the offenses set forth in Counts 1-3, but also of the repeat violent offender specifications, when in fact the court found him guilty of the specifications at the April 1, 2019 scheduling conference, as required by R.C. 2941.149.

{¶ 31} As this Court has noted:

"Crim.R. 36(A) permits trial courts to correct clerical mistakes in judgments or orders arising from oversight or omissions, using a nunc pro tunc entry." (Citation omitted.) *State v. Roach,* 2d Dist. Montgomery No. 23317, 2010-Ohio-566, ¶ 3. The use of a nunc pro tunc entry is limited to reflecting what the court actually decided but failed to properly include in its judgment. (Citations omitted.) *State v. Ritchie,* 2d Dist. Montgomery No. 24088, 2011-Ohio-2566, ¶ 8. Its sole function is to correct a clerical mistake in the execution of a ministerial act. (Citations omitted.) *Id.* " 'The term "clerical mistake" refers to a mistake or omission, mechanical in nature and apparent on the record, which does not involve a legal decision or

judgment.' " *State v. Arnold,* 2d Dist. Montgomery No. 22856, 2009-Ohio-3636, ¶ 57, quoting *State v. Brown,* 136 Ohio App.3d 816, 820, 737 N.E.2d 1057 (3d Dist.2000). Therefore, " '[t]he function of nunc pro tunc [entries] is not to change, modify, or correct erroneous judgments, but merely to have the record speak the truth.' " *Ritchie* at ¶ 10, quoting *Ruby v. Wolf,* 39 Ohio App. 144, 147, 177 N.E. 240 (8th Dist.1931). "A nunc pro tunc entry cannot be used to change something that was deliberately done." (Citation omitted.) *Id.*

*State v. Wolfe*, 2d Dist. Montgomery Nos. 26681, 26729, 26983, 2019-Ohio-4897, ¶ 11. *See also State v. Priest*, 2d Dist. Montgomery No. 25896, 2014-Ohio-3843, ¶ 11, citing *State v. Lester*, 130 Ohio St.3d 303, 2011-Ohio-5204, 958 N.E.2d 142 ("Where the manner of conviction was missing, the trial court could correct the omission by means of a nunc pro tunc entry.")

{¶ 32} Since the trial court's judgment entry incorrectly suggests that the jury found him guilty of the RVO specifications, his assignment of error is sustained to that extent only. The matter will be remanded to the trial court for it to issue a nunc pro tunc entry clearly reflecting the manner of Oliver's convictions on the repeat violent offender specifications. We further note that the court erroneously cited R.C. 2929.14(D)(2)(a) in connection with the repeat violent offender specifications, and there is no such section of the code relating to those specifications. It appears to this Court that the trial court intended to cite to R.C. 2929.14(*B*)(2)(a) in relation to the specifications. The trial court is further instructed to correct the erroneously-cited code section "R.C. 2929.14(D)(2)(a)." In all other respects, the judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and HALL, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Heather N. Ketter
Jeffrey R. McQuiston
Hon. Timothy N. O'Connell